# EXHIBIT A



| | Ir nshore Insu ance Services LLC. |
|---|---|
| | A subsidi ry of I o s ore Holdings (U.S.) Inc. |
| | E    arcadero Street |
| | Su te 1480 |
| | San Fran sco, CA 94111 |

August 11, 2017

Natalie Marquess, ARM, CIC
A n Ri  Insurance S rvice  West, Inc.
425 Market Street, Suite 2800
San Francisco, CA 94105

> **Re:** Roda & ields, LLC
> 60  pear Str et, Suite 600
> San  r ncis o, CA 94105
>
> **Line Of Business:** L fe  cie ces - Primary
> **Policy Number:** 002539202
> **Policy Term:** 7/1/201  T  7/1/2018

Dear Natalie:

Enclo ed  please  f nd  the  p l cy  fo   he  ab ve referenced   ccoun       ap r ciate  your  consideration  of Ironshore.  Feel free to c ntact me with any questions or concerns.

Sincerely,

Darcy Montevaldo
AVP Senior Production Specialist
Ironshore Insurance Services LLC.
Office: +1 (415) 291-2727
Mobile: +1 (415) 654-3642
Email  Da cy.Mont valdo@Ironshore.com



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**NOTICE:**

**1. THE INSURANCE POLICY THAT YOU (HAVE PURCHASED) (ARE APPLYING TO PURCHASE) IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

**2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

**3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

**4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**

**5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

**6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

**7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.**

**8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS**

**DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**

**Date: _____**

**Insured: _____**



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

# PRODUCTS/COMPLETED OPERATIONS LIABILITY AND PROFESSIONAL LIABILITY POLICY FOR LIFE SCIENCES

THIS POLICY IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS
(EXCEPT WHERE OTHERWISE INDICATED)
PLEASE READ THE ENTIRE POLICY CAREFULLY.

**Policy Number:** 002539202

**ITEM 1.  NAMED INSURED AND PRINCIPAL ADDRESS:**

Rodan & Fields, LLC
60 Spear Street, Suite 600
San Francisco, CA  94105

**ITEM 2.  SURPLUS LINES PRODUCER FIRM AND ADDRESS:**

Aon Risk Solutions
License No: OH83942

**ITEM 3.  POLICY PERIOD:**

Inception Date: July 01, 2017
Expiration Date: July 01, 2018
At 12:01 a.m. Standard Time both dates at the Principal Address Stated in ITEM 1.

**ITEM 4.  COVERAGES PURCHASED (As indicated by check mark in box):**

A)  Products/Completed Operations Liability   ☒
B)  Professional Liability                     ☒

**ITEM 5.  LIMITS OF LIABILITY :**

A)  Products/Completed Operations Limit of Liability

$10,000,000 Each Occurrence *(subject to the Aggregate Limit of Liability stated in Item 5G below)*

B)  Professional Liability Limit of Liability Wrongful Act

$10,000,000 Each Occurrence *(subject to the Aggregate Limit of Liability stated in Item 5G below)*

C) Withdrawal Expenses Reimbursement Insurance (Class 1 Recall only)

$100,000 in the Aggregate for all Withdrawal Expenses (*subject to the Aggregate Limit of Liability stated in Item 5G below*)

D) Repair and Replacement of "Impaired Property" Expenses

$10,000 in the Aggregate for all such Reimbursement Expenses (*subject to the Aggregate Limit of Liability stated in Item 5G below*)

E) Human Clinical Trial Participant Medical Expenses

$1,000 per participant / $5,000 in the Aggregate for all Medical Expenses (*subject to the Aggregate Limit of Liability stated in Item 5G below*)

F) Personal Information Protection Expenses Reimbursement Insurance

$25,000 in the Aggregate for all Personal Information Protection (*subject to the Aggregate Limit of Liability stated in Item 5G below*)

G) Aggregate Limit of Liability Applicable to Products/Completed

$10,000,000 in the Aggregate for all Operations Liability and Professional Liability Coverages, Damages, Defense Expenses, and other expenses covered under Insuring Agreements A through F of this Policy.

## ITEM 6.  DEDUCTIBLES / SELF-INSURED RETENTIONS

A) Products/Completed Operations Liability
   Each Occurrence Deductible or Self Insured Retention (SIR): $250,000 ☐Deductible ☒SIR

B) Professional Liability
   Each Wrongful Act Deductible or Self Insured Retention (SIR): $250,000 ☐Deductible ☒SIR

C) Withdrawal Expenses
   Each Withdrawal Deductible or Self Insured Retention (SIR): $25,000 ☐Deductible ☒SIR

D) Repair and Replacement of Impaired Property Expenses: No Deductible or SIR

E) Medical Expenses: No Deductible or SIR

F) Personal Information Protection Event Expenses
   Each Event Deductible or Self Insured Retention (SIR): $5,000 ☒Deductible ☐SIR

G) Aggregate Deductible or SIR Eroded by All of the Above Retentions:  $1,250,000

## ITEM 7.  RETROACTIVE DATES

A) Products/Completed Operations Liability       08/08/2009
B) Professional Liability                        08/08/2009

## ITEM 8.  TOTAL ADVANCE PREMIUM: (minimum 25% earned premium)

Premium:  REDACTED

*Compliance with all surplus lines placement requirements, including stamping the Policy and collection and payment of surplus lines taxes, is the responsibility of the broker.*

Total Amount Due:  REDACTED

*See Invoice for the date Premium is due and payable.  Failure to pay the premium in full may result in voidance of coverage.*

Rating Basis: Sales
Auditable: Yes
Audit Rate: Flat

**ITEM 9.  NOTICES UNDER SECTION IV OF THE POLICY SHOULD BE ADDRESSED TO:**

USCLAIMS@IRONSHORE.COM                         All other notices under the Policy should be addressed to:

Claims Department                                    Underwriting Department
IronHealth                                           IronHealth
175 Powder Forest Drive,                             175 Powder Forest Drive,
Weatogue, CT 06089                                   Weatogue, CT 06089
860-408-7801                                         860-408-7801
IronHealthClaims@ironshore.com

**ITEM 10.  POLICY FORM & ENDORSEMENTS ATTACHED AT ISSUANCE:**

LFS.005 (1.10 ed) Primary Policy Form

1. LFS.END.143 (12.11 ed ) Mandatory Designated Products Exclusion (Primary)
2. LFS.END.186 (12.12 ed.) Amend Definition for Bodily Injury
3. LFS.END.188 (1.13 ed.) Primary and Non-Contributory Endorsement
4. LFS.041 (6.10 ed) Batch Occurrence Endorsement
5. LFS.057 (8.15 ed.) Foreign Clinical Trial Worldwide & DIC Coverage Endorsement
6. LFS.087 (11.10 ed.) Omnibus Named Insured Endt
7. LFS.END.195 (1.13 ed.) Most Favorable Venue for Punitive Damages
8. LFS.END.239 (8.14 ed.) Business Continuity Endorsement
9. LFS.END.302 (10.15 ed.) Amend Notice of Circumstances and Claims
10. LFS.END.301 (10.15 ed.) Notice of Circumstances or Claims
11. OFAC.END.001 (11.14 ed.) OFAC Compliance Notice
12. LFS.END.049 (12.11 ed.) Amendment to Section IV. Exclusions  (Silicone)
13. LFS.END.358 (8.17 ed.) Premium Audit Endorsement

These Declarations, the completed signed Application and the Policy with Endorsements shall constitute the contract between the Insured and the Underwriter.

BY:  _____                    **DATE:** August 11, 2017

**Authorized Signature**

# CALIFORNIA CONSUMER SERVICES NOTICE

Your policy has been issued by:

**Ironshore Specialty Insurance Company**
**75 Federal Street**
**5th Floor**
**Boston, MA 02110**

If you are having problems, you can contact **Ironshore Specialty Insurance Company** at the following address and telephone number:

**75 Federal Street**
**5th Floor**
**Boston, MA 02110**
**(877) IRON-411**

**THE FOLLOWING ADDRESS AND TOLL-FREE TELEPHONE NUMBER ARE AVAILABLE FOR YOUR USE IN THE EVENT A SATISFACTORY SOLUTION CANNOT BE OBTAINED FROM YOUR INSURANCE AGENT OR COMPANY REGARDING ANY PROBLEMS YOU MAY EXPERIENCE:**

**THE DEPARTMENT OF INSURANCE**
**CONSUMER SERVICES**
**300 SOUTH SPRING STREET**
**LOS ANGELES, CA  90013**
**1-800-927-HELP**



## IRONSHORE SPECIALTY INSURANCE COMPANY

**Mailing Address:**
**75 Federal Street**
**5th Floor**
**Boston, MA  02110**
**Toll Free: (877) IRON411**

**Insured Name:** Rodan & Fields, LLC
**Policy Number:**002539202

# IronHealth for Life Sciences

**THIS IS A CLAIMS-MADE AND REPORTED POLICY THAT APPLIES ONLY TO CLAIMS WHICH ARE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD (OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE), AND REPORTED AS REQUIRED BY SECTION V, CONDITION A.  DEFENSE EXPENSES COVERED BY THIS POLICY ARE INCLUDED WITHIN THE LIMITS OF LIABILITY.  VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. PLEASE READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.**

Throughout this policy, the words "you" and "your" refer to the **Named Insured** shown in the Declarations, and any other person or organization qualifying as an **Insured** under SECTION III -WHO IS AN INSURED of this Policy. The words "we", "us" and "our" refer to the Company providing this insurance.  Other words and phrases that appear in **bold** have special meaning described in SECTION VII- DEFINITIONS.

In consideration of the payment of premium, in reliance on the statements made in the application, and subject to the Definitions, Exclusions, Conditions and other terms of this Policy, it is agreed as follows:

### SECTION I.   INSURING AGREEMENTS

#### A.   PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE

We will pay **Damages** that the **Insured** becomes legally obligated to pay because of a **Claim** alleging **Bodily Injury** or **Property Damage** caused by an **Occurrence**, provided that:

1. the **Bodily Injury** or **Property Damage** is included within the **Products-Completed Operations Hazard** to which this insurance applies;

2. the **Bodily Injury** or **Property Damage** takes place on or after the Retroactive Date and prior to the expiration date of the **Policy Period**;

3. the **Occurrence** takes place in the **Coverage Territory**; and

4. the **Claim** was first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period, and was reported to us as required by SECTION V, Condition A.  A **Claim** will be deemed first made as set forth in SECTION V, Condition B.

#### B.   PROFESSIONAL LIABILITY INSURANCE

We will pay **Damages** that the **Insured** becomes legally obligated to pay because of a **Claim** alleging a **Wrongful Act** by the **Insured** or by a party for whose conduct the **Insured** may be legally responsible in rendering or failing to render **Professional Services** (including in the course of a **Human Clinical Trial**), provided that:

1. the **Wrongful Act** takes place on or after the Retroactive Date and prior to the expiration date of the **Policy Period**;

2. the **Wrongful Act** takes place in the **Coverage Territory**; and

3. the **Claim** was first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period, and was reported to us as required by SECTION V, Condition A. A **Claim** will be deemed first made as set forth in SECTION V, Condition B.

**Human Clinical Trials** described in your application are automatically covered, unless we exclude them by endorsement to this Policy. This Policy will only apply to those trials, known as **Human Clinical Trials Which Must Be Underwritten And Approved To Be Covered,** if you provide us with prior written notice describing the trial, we agree to cover such trial, and you agree to any terms, conditions and additional premiums imposed by us for coverage of such trial.

**C. WITHDRAWAL EXPENSES REIMBURSEMENT INSURANCE**

Subject to the **Withdrawal Expenses** Limit of Liability and the Deductible/SIR stated in Item 5C of the Declarations, we will reimburse the **Named Insured** for any **Withdrawal Expenses** actually paid by any **Insured**, provided that:

1. the **Withdrawal Expenses** are incurred as a direct result of a **Class I Recall**;

2. the **Class I Recall** begins during the **Policy Period**;

3. the **Class I Recall** is reported to us as soon as practicable and within 10 days of the expiration of the **Policy Period**; and

4. the **Withdrawal Expenses** are incurred within one year of the date the **Class I Recall** began.

This **Withdrawal Expenses** Limit of Liability is included within, and is not in addition to, the Aggregate Limit of Liability for Products/Completed Operations Liability and Professional Liability coverage stated in Item 5G of the Declarations.

**D. REPAIR OR REPLACEMENT OF IMPAIRED PROPERTY EXPENSES REIMBURSEMENT INSURANCE**

Subject to the Repair or Replacement of **Impaired Property** Expenses Limit of Liability stated in Item 5D of the Declarations, we will pay reasonable and necessary expenses actually paid by any **Insured** to repair, update, replace, adjust or inspect your **Impaired Property** due to a defect, deficiency or inadequate condition in it, provided that the repair, update, replacement, adjustment or inspection:

1. commences during the **Policy Period**;

2. is reported to us as soon as practicable and during the **Policy Period**; and

3. you obtain our written consent before incurring such expenses.

This Repair or Replacement of **Impaired Property** Expenses Limit of Liability is included within, and is not in addition to, the Aggregate Limit of Liability for Products/Completed Operations Liability and Professional Liability coverage stated in Item 5G of the Declarations.  No deductible or Self-Insured Retention applies to this coverage.

**E. HUMAN CLINICAL TRIAL PARTICIPANT MEDICAL EXPENSES REIMBURSEMENT INSURANCE**

Subject to the Human Clinical Trial Participant **Medical Expenses** Limits of Liability stated in Item 5E of the Declarations, we will reimburse the **Named Insured** for **Medical Expenses** actually paid by any **Insured** to treat **Bodily Injury** to a participant in a **Human Clinical Trial**, provided that:

1. the **Bodily Injury** takes place during the **Policy Period**;

2. the **Bodily Injury** results directly from participation in the **Human Clinical Trial**;

3. the **Medical Expenses** are reported and submitted to us within 1 year of the **Bodily Injury**; and

4. the **Medical Expenses** are not incurred for planned concurrent treatment of side effects as set forth in the **Human Clinical Trial** protocol.

This Human Clinical Trial Participant **Medical Expenses** Limits of Liability are included within, and are not in addition to, the Aggregate Limit of Liability for Products/Completed Operations Liability and Professional Liability coverage stated in Item 5G of the Declarations.  No deductible or Self-Insured Retention applies to this coverage.

**F.   PERSONAL INFORMATION PROTECTION EXPENSES REIMBURSEMENT INSURANCE**

Subject to the **Personal Information Protection Expenses** Limit of Liability and the Deductible/SIR stated in item 5F of the Declarations, we will reimburse the **Named Insured** for any **Personal Information Protection Expenses** actually paid by the **Named Insured** for a **Personal Information Protection Event,** provided that:

1.   the **Personal Information Protection Event** takes place in the course of a **Human Clinical Trial** and during the **Policy Period**;

2.   the **Personal Information Protection Event** is reported to us as soon as practicable and during the **Policy Period** or within 30 days of the Policy expiration date; and

3.   you obtain our written consent before incurring **Personal Information Protection Event Expenses**.

The **Personal Information Protection Expenses** Limit of Liability is included within, and is not in addition to, the Aggregate Limit of Liability for Products/Completed Operations and Professional Liability coverage stated in Item 5G of the Declarations.

**G.   DEFENSE OF SUITS AND PAYMENT OF DEFENSE EXPENSES UNDER INSURING AGREEMENTS A AND B**

1.   We will have the right and duty to defend the **Insured** against any **Suit** covered under Insuring Agreements A or B above, even if the allegations made in the **Suit** are groundless, false or fraudulent. We may, at our discretion, investigate any **Occurrence** or **Wrongful Act**.  We also have the discretion to settle any **Claim** or **Suit** covered under Insuring Agreements A or B.

2.   We will pay **Defense Expenses** incurred on any covered **Claim** we elect to investigate or settle, or any **Suit** we defend.

3.   The amounts we will pay for **Damages** and **Defense Expenses** under Insuring Agreements A and B and for expenses covered under Insuring Agreements C, D, E and F are limited as described in SECTION II. LIMITS OF LIABILITY AND DEDUCTIBLES OR SELF-INSURED RETENTIONS. Our right and duty to defend or make any payments under this Policy ends when the applicable Limit of Liability has been exhausted through our payment of **Damages** and **Defense Expenses** covered under Insuring Agreements A and B, and expenses covered under Insuring Agreements C, D, E and F.

**SECTION II.   LIMITS OF LIABILITY AND DEDUCTIBLES OR SELF- INSURED RETENTIONS**

**A.   Limits of Liability**

1.   The Limits of Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  a.   **Insureds**;

  b.   **Claims** made or **Suits** brought; or

  c.   persons or organizations making **Claims** or bringing **Suits**.

2.   The Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability stated in Item 5G of the Declarations is the most we will pay under this Policy for all **Damages, Defense Expenses, Withdrawal Expenses,** repair or replacement of **Impaired Property** expenses, **Medical Expenses** and **Personal Information Protection Expenses** for which this Policy provides insurance.

3.   Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the Each **Occurrence** Limit stated in Item 5A of the Declarations is the most we will pay for the sum of all **Damages** and **Defense Expenses** because of all **Bodily Injury** and **Property Damages** arising out of any one **Occurrence** for which this Policy provides insurance under Insuring Agreement A.

4.   Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the Each **Wrongful Act** Limit stated in Item 5B of the Declarations is the most we will pay for all **Damages** and **Defense Expenses** resulting from one **Wrongful Act** (including **Related Wrongful Acts**) for which this Policy provides insurance under Insuring Agreement B.

5. Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the **Withdrawal Expenses** Limit of Liability stated in Item 5C of the Declarations is the most we will pay for all **Withdrawal Expenses** for which this Policy provides insurance under Insuring Agreement C.

6. Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the Repair and Replacement of **Impaired Property** Expenses Limit of Liability stated in Item 5D of the Declarations is the most we will pay for all repair and replacement of **Impaired Property** expenses for which this Policy provides insurance under Insuring Agreement D.

7. Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the per participant **Human Clinical Trial** Participant **Medical Expenses** Limit of Liability stated in Item 5E of the Declarations is the most we will pay for all **Medical Expenses** incurred by any one **Human Clinical Trial** participant for which this Policy provides insurance under Insuring Agreement E. This per participant Limit of Liability is also subject to the Aggregate Medical Expense Limit of Liability stated in Item 5E which is the most we will pay for all **Medical Expenses** incurred by all **Human Clinical Trial** participants for which this Policy provides insurance under Insuring Agreement E.

8. Subject to the Products/Completed Operations Liability and Professional Liability Aggregate Limit of Liability, the **Personal Information Protection Event** Limit of Liability stated in Item 5F of the Declarations is the most we will pay for all **Personal Information Protection Event Expenses** for which this Policy provides insurance under Insuring Agreement F.

9. All **Insureds** under this Policy share the Limits of Liability.

10. If any **Claim** made against an **Insured** is covered both under this Policy and under any other primary policy issued by us or any of our affiliates, our (and, if applicable, our affiliate's) maximum aggregate limit of liability under all such policies for all **Damages** and/or **Defense Expenses** in respect of such **Claim** will not exceed the largest single available limit of liability under any such policy.  In no event will more than one policy issued by us respond to the same **Claim**.

11. The limits of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the applicable limit of liability.

**B. Deductibles or Self-Insured Retentions**

1. You will be responsible for payment in full of any applicable Deductibles or Self-Insured Retentions stated in Item 6 of the Declarations. We have the option, but not the obligation, to pay all or part of any applicable Deductible or Self-Insured Retention on your behalf.  In the event we exercise this option, you will repay us promptly upon demand.

2. Our obligation under this Policy to pay **Damages, Defense Expenses** or expenses covered under Insuring Agreements A, B, C, and F will apply in excess of any applicable Deductible or Self-Insured Retention.

3. Where applicable, the Deductible or Self-Insured Retention will be satisfied by your payment of any **Damages**, **Defense Expenses** or expenses covered under this Policy.

**SECTION III.  WHO IS AN INSURED**

A. You are an **Insured**.  If you are designated in the Declarations as:

an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner.

1. a partnership (including a limited liability partnership) or a joint venture, you are an **Insured**.  Your members, your partners and their spouses are also **Insureds**, but only with respect to the conduct of your business.

2. a limited liability company, you are an **Insured**.  Your members are also **Insureds**, but only with respect to the conduct of your business.  Your managers are also **Insureds**, but only with respect to their duties as your managers.

3. an organization (including a professional corporation) other than a partnership, joint venture or limited liability company, you are an **Insured**. Your **Executive Officers** and directors are also **Insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **Insureds**, but only with respect to their liability as stockholders.

4. a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees.

B. Each of the following is also an **Insured**:

1. **Employees and Volunteers** --Your **Employees** are **Insureds**, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business, and your **Volunteer Workers** are **Insureds**, but only for acts within the scope of their duties related to the conduct of your business. However, none of these **Employees** or **Volunteer Workers** are **Insureds** for:

   a. **Bodily Injury**:

      (i) to you or any other **Employee** or **Volunteer Worker** while performing duties related to the conduct of your business;

      (ii) to the spouse, child, parent, brother or sister of any person identified in paragraph B1(a)(i) above as a result of the **Bodily Injury** identified in that same subparagraph ;

      (iii) for which there is any obligation to share **Damages** with or repay someone else who must pay **Damages** because of the injury described in paragraphs B(1)(a)(i)-(ii) above; or

   b. **Property Damage** to property:

      (i) owned, occupied or used by any **Insured**; or

      (ii) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by any **Insured**.

2. **Real Estate Managers** -- any person (other than your **Employee** or **Volunteer Worker**) or any organization while acting as your real estate manager.

3. **Temporary Property Custodians** -- Any person or organization having proper temporary custody of your property if you die, but only:

   a. with respect to liability arising out of the maintenance or use of that  property; and

   b. until your legal representative has been appointed.

4. Legal Representative -- Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this Policy.

5. Vendors of Your Product -- Any person or organization who is a vendor of Your Product is an **Insured**, but only with respect to the vendor's liability for Damages, Bodily Injury or Property Damage resulting from the distribution or sale of Your Product in the regular course of the vendor's business and only if this insurance applies to such product (that is, the product must be included in the Products-Completed Operations Hazard). However, such vendor is not an Insured with respect to:

   a. any assumption of liability by such vendor in a contract or agreement.  This limitation does not apply to liability for **Damages, Bodily Injury** or **Property Damage** to which this insurance applies that such vendor would have in the absence of such contract or agreement;

   b. any representation or warranty by such vendor which is unauthorized by you;

   c. any chemical or physical change in **Your Product** made intentionally by such vendor;

   d. any **Damages** arising out of the vendor's sole negligence or willful misconduct;

   e. any repackaging**,** unless unpacked by the vendor solely for the purpose of inspection, demonstration or testing, or the substitution of parts under instruction from the manufacturer and then repacked in the original container;

      f.     any demonstration, installation, servicing or repair operations, except such operations performed at the vendor's or prospective buyer's premises in connection with the sale of **Your Product**; or

      g.     **Your Product** which, after distribution or sale by you, has been labeled or relabeled or used as a container, ingredient or part of any other thing or substance by or for the vendor.

However, no person or organization from whom you have acquired **Your Product**, or any container,

ingredient or part entering into, accompanying or containing **Your Product**, is an **Insured** under this provision.

6.   Life Sciences Product Sales Contractor **or** Life Sciences Product Services Contractor – **Any person (other than your** Employee**) or organization acting as a** Life Sciences Product Sales Contractor **or a** Life Sciences Product Services Contractor **for you, pursuant to a written contract or agreement between you and such contractor which requires you to provide such contractor with insurance such as that provided by this Policy is an** Insured**, but only:**

      a.     with respect to the **Life Sciences Product Sales Contractor's** liability for **Damages**, **Bodily Injury** or **Property Damage** resulting from such contractor's dispensing, distribution, furnishing or sale in the regular course of the contractor's business of a **Life Sciences Product** which is **Your Product** and is included in the **Products-Completed Operations Hazard**; and

      b.     with respect to the **Life Sciences Product Services Contractor's** liability for **Damages** resulting from **Wrongful Acts** within the regular course of such contractor's business.

      c.     However, no **Life Sciences Product Sales Contractor** or **Life Sciences Services Contractor** is an **Insured** with respect to:

         (i)   any assumption of liability by such contractor in a contract or agreement.  This limitation does not apply to liability for **Damages**, **Bodily Injury** or **Property Damage** to which this insurance applies, that the contractor would have in the absence of such contract or agreement;

         (ii)  any representation or warranty by such contractor which is unauthorized by you;

         (iii) any chemical or physical change in **Your Product** made intentionally by such contractor;

         (iv) any **Damages** arising out of such contractor's sole negligence, recklessness or any willful misconduct, including willful violation of any law, rule or regulation; or

         (v)  relabeling of **Your Product** by such contractor which, after distribution or sale by you, has been labeled or relabeled or used as a container, ingredient or part of any other substance or thing by or for such contractor.  This limitation does not apply to any relabeling of **Your Product** in the regular course of dispensing or furnishing the required amount or dosage of such product.

Such contractors will only be **Insureds** to the extent of the limits and coverage you are required to provide under the contract or agreement. However, no person or organization from whom you have acquired **Your Product**, or any container, ingredient or part entering into, accompanying or containing **Your Product**, is an **Insured** under this provision.

7.   **Institutional Review Board**—Any **Institutional Review Board** responsible for reviewing a **Human Clinical Trial** which   an **Insured** sponsors, co-sponsors or works on, but only with respect to the **Institutional Review Board's** vicarious liability for **Damages** resulting from **Your Product**, **Your Work** or your **Professional Services**.

However, no such **Institutional Review Board** is an **Insured** with respect to:

      a.     any assumption of liability by such board (or any member of the board) in a contract or agreement. This limitation does not apply to liability for **Damages** to which this insurance applies, that such board (or member of such board) would have in the absence of such contract or agreement; or

      b.     any **Damages** arising out of the **Institutional Review Board's** sole negligence, recklessness or willful misconduct, including willful violation of any law, rule or regulation.

C.  **Blanket Additional Insured**

Any person or organization (other than those qualifying as Insureds above) to whom or to which you are obligated, by virtue of a written contract or agreement, to provide  insurance such as that afforded by this Policy,  is an Insured, but only:

1.   if you agreed to provide insurance to such person or organization as an Insured prior to the **Occurrence** or **Wrongful Act**;

2.  to the extent of the limits and coverage the contract or agreement requires you to provide; and

3.  with respect to such contractual obligee's vicarious liability arising solely out of **Your Product, Your Work** or your **Professional Services**. (Such contractual obligee may not be at fault, in whole or in part).

However, no such contractual obligee is an Insured with respect to the obligee's assumption of liability in a contract or agreement, unless such liability would exist in the absence of the contract or agreement.

D.  **Newly Acquired or Created Organizations** – Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain majority ownership or majority interest, will qualify as a **Named Insured** if there is no other similar insurance available to that organization. However:

1.  coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the **Policy Period**, whichever is earlier; and

2.  coverage does not apply to **Bodily Injury, Property Damage**, or **Wrongful Acts** that occurred before you acquired or formed the organization.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a **Named Insured** in the Declarations or by Endorsement to this Policy.

## SECTION IV.  EXCLUSIONS

A.  **Exclusions Applicable to All Coverages (Except Where Otherwise Indicated)**

This insurance does not apply to **Damages** or **Defense Expenses** incurred in connection with a **Claim** under Insuring Agreements A or B, or to expenses otherwise covered under Insuring Agreements C, D, E or F, which are based upon, arising out of, directly or indirectly resulting from or in any way involving:

1.  **Contractual Liability**

Your assumption of liability or obligations in a contract or agreement.  This exclusion does not apply to liability or obligations:

a.  that you would have in the absence of the contract or agreement; or

b.  that you assumed in an **Insured Contract**, provided the **Bodily Injury, Property Damage** or **Wrongful Act** occurs subsequent to your execution of the **Insured Contract**. However, this exception for liability you assumed in an **Insured Contract** only applies to the extent of any limits or coverage required by the **Insured Contract**. Solely for the purposes of the coverage provided by this subparagraph (b), we will treat as **Damages** any attorneys fees or litigation expenses for which you are liable under such **Insured Contract**.

2.  **Unapproved Human Clinical Trial**

any exposure to material, upon or within human beings during a **Human Clinical Trial**, which exposure occurs after:

a.  a hold has been placed on the trial;

b.  approval of an Investigational **New Drug Application, Investigational Device Exception Application** or similar authorization applicable to the trial has been withdrawn; or

c.  the trial has been ordered to be discontinued by any governmental or regulatory authority having jurisdiction.

3. **Worker's Compensation and Similar Laws**

   your actual or alleged obligations under workers compensation, disability benefits or unemployment compensation law or any similar law.

4. **Employer's Liability**

   **Bodily Injury** to your **Employee** arising out of and in the course of the **Employee's**:

   a. employment by you; or

   b. performing duties related to the conduct of your business;

   including a **Claim** by the spouse, child, parent, brother or sister of that **Employee** as a consequence of such**Bodily Injury**. Voluntary participation as a human test subject in a **Human Clinical Trial** will

   not be deemed to be within the course of employment or to be the performance of duties as described in sub-paragraphs (a-b) of this exclusion.

   This exclusion applies:

   c. whether you may be liable as an employer or in any other capacity; and

   d. to any obligation to share **Damages** with or repay someone else who must pay **Damages** because of the injury.

   This exclusion does not apply to liability assumed by you under an **Insured Contract**.

5. **Pollution**

   a. actual, alleged or threatened exposure to, or generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth of, treatment, removal or disposal of, any **Pollutant**, except where such exposure, generation, storage, manifestation, transportation, discharge, emission, release, dispersal, seepage, migration, escape, appearance, presence, reproduction, growth, treatment, removal or disposal was caused by an unintentional fire or heat, smoke or fumes issuing from such unintentional fire. This exclusion applies regardless of whether or not the pollution was sudden, accidental, expected gradual, intentional or preventable;

   b. any fee, cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize or rehabilitate any **Pollutant**;

   c. any fee, cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to any **Pollutant**;

   However this exclusion will not apply to any **Claim** for **Bodily Injury** or **Property Damage** caused by heat, smoke or fumes from a hostile fire.

6. **War**

   **War**, whether or not declared, or any act or condition incident to **War**. **War** includes civil war, insurrection, rebellion or revolution.

7. **Prior Acts**

   an **Occurrence**, **Wrongful Act** or **Circumstance**:

   a. disclosed in your application of insurance or any accompanying documents provided to us; or

   b. of which you had knowledge or information, prior to the first inception date of continuous claims-made coverage with us, which knowledge or information a reasonable person would believe might result in a **Claim**. This includes any **Occurrence**, **Wrongful Act** or **Circumstance** which began or took place before the inception date of the Policy and which is covered under any batch, integrated occurrence or extended coverage language in any other policy issued to you prior to the inception date of this Policy. We may, in our discretion, agree to cover such matter by Endorsement.

8.  **Asbestos**

asbestos, regardless of whether the asbestos is:

    a.  airborne as a fiber or particle;

    b.  contained in a product;

    c.  carried or transmitted on clothing or by any other means; or

    d.  contained in or a part of:

        (i)  any building;

        (ii)  any building material;

        (iii)  any insulation product; or

        (iv)  any component part of any building, building material or insulation product.

9.  **Nuclear Hazard**

any actual or alleged nuclear hazards, including nuclear fission, nuclear reaction, nuclear radiation, radioactive contamination or radioactive substance.  This exclusion applies to loss or damages:

    a.  for which the **Insured** is:

        (i)  protected under a nuclear energy liability insurance policy or which would have been protected under such policy if that policy's limits had not been used up;

        (ii)  required by law to maintain financial protection by the Federal Atomic Energy Act or any other such legislation;

        (iii)  entitled to indemnity from any government under any contract or agreement between the government and the **Insured**, or to which the **Insured** would have been entitled if this Policy had not been issued.

    b.  based upon or arising out of the hazardous properties of nuclear material if such material is:

        (i)  at or has been discharged or dispersed from any nuclear facility owned by, or operated by or on behalf of, any **Insured**; or

        (ii)  contained in spent fuel or waste at any time transported, handled, stored, disposed of, processed, treated, possessed or used by or on behalf of any **Insured**.

    c.  in any way related to the furnishing by an **Insured** of services, materials, parts or equipment  in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

    d.  based upon or arising out of the existence, required removal or abatement of radon or other naturally occurring radioactive materials present on or below the ground or emanating into a location owned, leased or under the care, custody or control of the **Insured**.

As used in this Exclusion, the following definitions apply:

Hazardous properties includes radioactive, toxic or explosive properties.

Nuclear material means source material, special nuclear material, or by-product material.

Source material, special nuclear material, and by-product material have the meanings given them by the United States Atomic Energy Act of 1954 or in any law amendatory thereof.

Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

Waste means any waste material (a) containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its facility included under the first two paragraphs of the definition of nuclear facility.

Nuclear facility means:

    a.   any nuclear reactor;

    b.   any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium; (ii) processing or utilizing spent fuel; or (iii) handling processing or packaging waste;

    c.   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    d.   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

10. **Intellectual Property Law or Rights**

    any actual or alleged violation, by any person or organization (including any **Insured**) of any **Intellectual Property Law or Right**.

11. **Mold**

    any actual or alleged:

    a.   exposure to, or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of, **Mold**;

    b.   cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize, rehabilitate, or in any other way respond to or assess the effect(s) of **Mold**;

    c.   any cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, governmental agency, regulatory body or civil, public or military authority in connection with or in any way relating to **Mold**;

12. **Sexual Abuse, Harassment, Humiliation, Discrimination**

    a.   any actual or alleged sexual abuse, harassment, humiliation, molestation, assault or battery of any person, or

    b.   discrimination, including but not limited to, that based on race, color, sex, religion, age, disability, pregnancy, national origin or sexual orientation,

by an **Insured** or by another person for whose conduct the **Insured** may be legally responsible.

This exclusion applies regardless of the legal theory upon which the **Insured** is alleged to be liable for the conduct described in subparagraphs (a) and (b) of this exclusion, including negligent employment, supervision or investigation, or failure to supervise or investigate.

However, this exclusion will not apply to **Medical Expenses** covered under Insuring Agreement E.

13. **Banned Materials**

    **Your Product** or **Your Work** that is manufactured, developed, designed, created, tested, sold, leased, licensed, rented, handled, marketed, distributed or disposed of by you or others on your behalf in known violation of any law, statute, ordinance or regulation.

14. **Dishonest, Fraudulent, Criminal or Malicious Acts**

    a.   willful misconduct or willfully dishonest, fraudulent, criminal or malicious act, error or omission by any **Insured**; or

    b.   willful violation by any **Insured** of any law, statute, ordinance, or regulation.

However, with the exception of a **Claim** alleging **Healthcare Fraud and Abuse**, we will defend the **Insured** against such **Suit,** unless or until it has been determined that this exclusion applies.  Determination of the applicability of this exclusion may be made by an admission or by a final adjudication in a proceeding constituting the **Claim** or in a proceeding separate from or collateral to any proceeding constituting the **Claim**. Under no circumstances will we pay **Defense Expenses** or **Damages** on a **Claim** for **Healthcare Fraud and Abuse**, regardless of who brings such **Claim.**

15. **Misappropriation of Funds**

the conversion, commingling, misappropriation or improper use of funds or other property, or the gaining of any personal profit or advantage to which the **Insured** is not legally entitled.

16. **Insured's Fees or Other Remuneration**

a dispute over fees, remuneration or other compensation charged  by the **Insured** for **Professional Services**.

17. **Insured's Capacity**

the **Insured's** acts in his/her capacity as a director (other than a medical director participating in the **Insured's** own **Human Clinical Trial**), officer or shareholder of any organization.

18. **Personal and Advertising Injury**

**Personal and Advertising Injury**, except and to the extent that such **Personal and Advertising Injury**:

   a.   arises out of a **Human Clinical Trial**; or

   b.   results in **Personal Information Protection Event Expenses**.

19. **Direct Patient Care/Medical Malpractice**

the rendering of, or failure to render, **Medical Services.** However, this exclusion does not apply to **Defense Expenses** or **Damages** paid by reason of:

   a.   the providing (without any expectation of remuneration) of emergency medical treatment, including cardiopulmonary resuscitation, at the scene of an accident, medical crisis or disaster by physicians, dentists, emergency medical technicians, paramedics or other licensed healthcare professionals employed by you;

   b.   the conduct of **Human Clinical Trials** by physicians and other licensed healthcare professionals, provided that they fully comply with applicable guidelines and written protocols;

   c.   instructions or advice you give concerning **Your Product**; or

   d.   a dangerous condition, defect, deficiency or inadequacy in **Your Product.**

20. **Performance Delay**

a delay by or on behalf of the **Insured** with respect to the performance of any contract or agreement, including a delay in delivering **Your Product** and a delay in performing **Your Work**.

21. **Off-Label Promotion**

your promotion of off-label or unapproved uses for drugs or medical devices approved by the Food and Drug Administration for other uses.

22. **Lead**

   1.   **Bodily Injury**, **Property Damage**, **Personal and Advertising Injury**  or other liability for past, present or future **Claims** or **Suits** arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of or testing for, lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever;

   2.   the costs of clean up or removal of lead or products and materials containing lead;

3. the costs of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, or lead or products and materials containing lead;

4. the cost of disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damages to the public health or welfare or the environment, which may otherwise result; or

5. the cost of compliance with any law or regulation regarding lead.

**B. Exclusions Applicable to Products-Completed Operations Liability Insurance (Insuring Agreement A) and the Expense Reimbursement Insurance (Insuring Agreements C, D, E and F)**

This Policy will not apply to any **Damages** or **Defense Expenses** incurred in connection with a **Claim** under Insuring Agreement A, or to expenses otherwise covered under Insuring Agreements C, D, E or F, which are based upon, arising out of, directly or indirectly resulting from or in any way involving:

1. **Expected or Intended Injury**

   **Bodily Injury** or **Property Damage** intended by the **Insured** or that would be expected from the standpoint of a reasonable person in the circumstances of the **Insured**, even if the actual **Bodily Injury** or **Property Damage** is of a different degree or type than that intended or expected. This exclusion does not apply to:

   a. **Bodily Injury** resulting from the use of reasonable force to protect persons or property, or

   b. **Bodily Injury** which is intended or can be expected to result from reasonable use of **Your Product**, including **Bodily Injury** arising out of known side effects or known adverse reactions to **Your Product**.

2. **Property Damage to Property You Own or Property In Your Care, Custody or Control**

   **Property Damage** to:

   a. property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   b. premises you sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

   c. property loaned to you;

   d. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **Property Damage** arises out of those operations; or

   e. that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

   Paragraphs a and d do not apply to expenses incurred to repair, replace, enhance, restore or maintain **Impaired Property** which are covered under Insuring Agreement D.

   Paragraph b of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

   Paragraph d does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

3. **Property Damage to Your Product**

   **Property Damage** to **Your Product** arising out of it or any part of it.

4. **Property Damage to Your Work**

   **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

5. **Property Damage to Impaired Property or Property Not Physically Injured**

   **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

   a. a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

   b. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

   This exclusion does not apply to:

   (i) the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use; or

   (ii) expenses incurred to repair, update, replace, adjust or inspect **Impaired Property** which are otherwise covered under Insuring Agreement D.

6. **Recall of Products, Work or Impaired Property**

   **Damages** claimed for any injury, loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   a. **Your Product**;

   b. **Your Work**; or

   c. **Impaired Property**;

   if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. However, this exclusion does not apply to any:

   d. **Claim** for **Bodily Injury,** or

   e. **Withdrawal Expenses** covered under Insuring Agreement C.

7. **Other Products**

   manufacturing, handling, distribution, advertising, labeling, sale, application, ingestion, consumption, testing, exposure to or any use of any product or substance known as, made of, or containing any one or more the following:

   a. Birth Control Contraceptives

   b. Fenfluramine, Phentermine or Dexfenfluramine;

   c Thalidomide

   d. Latex;

   e. Phenylpropanolamine (PPA)

   f. Accutane or Isotretinonin

   g. Silcone and/or Silica

   h. diethylstilbestrol, or DES, or which has the same chemical formulary, or which is a stilbene derivative,

   i. Ephedra, Mahuang, Ephedra sinica, Chines Ephedra, ephedrine, pseudophedrine, norpseudoephedrine,

   j. Nefazadone,

   k. Thimerosol;

   l. Vaccines;

   m. Hormone Replacement Therapy Products;

   n. Selective Seratonating Reuptake Inhibitors (SSRI);

      o.  DI(2-ethylhexyl)phthalate.

any other product or substance having a substantially similar formulation, structure, or function as the products listed above, by whatever name manufactured or marketed.

8. **Professional Services**

the rendering of or failure to render **Professional Services** by you or another party for whose conduct you may be legally responsible.  However, this exclusion does not apply to **Damages** or **Defense Expenses** resulting from **Your Work** as a **Life Sciences Product Sales Contractor** or a **Life Sciences Product Services Contractor;**

C. **Exclusions Applicable to Professional Liability Insurance (Insuring Agreement B) and to the Expense Reimbursement Insurance (Insuring Agreements C,D,E, and F)**

This Policy will not apply to:

1. **Products/Completed Operations Liability Claims**

any **Claim** which is covered under Insuring Agreement A of this Policy.

## SECTION V.  CONDITIONS

We have no duty to provide coverage under this Policy unless you and any other involved **Insured** have fully complied with the Conditions contained in this Policy.

A. Your Duties in the Event of an **Occurrence**, **Wrongful Act**, **Circumstance**, **Claim** or **Suit**

1. **Notice of Circumstances.**

a. If, prior to the end of the **Policy Period**, any **Executive Officer**, member of your legal or risk management departments, or any other person charged with responsibility for your insurance administration, becomes aware of and provides us with written notice (in accordance with subparagraph b below) of an **Occurrence**, **Wrongful Act** or **Circumstance** which may reasonably result in a **Claim** or **Suit** to which this insurance applies, then any **Claim** or **Suit** which subsequently arises out of such **Occurrence, Wrongful Act** or **Circumstance** will be deemed made during the **Policy Period,** provided that the **Claim** is made or the **Suit** is brought before:

(i)  the end of this **Policy Period**; or

(ii)  the period of a subsequent, continuous renewal or replacement of this insurance that is issued by us or by an affiliate of ours.

b. You must provide us with full particulars of the potential **Claim**, including, but not limited to:

(i)  the time, place and nature of the **Occurrence**, **Wrongful Act** or **Circumstance;**

(ii)  the identity of all potential claimants and **Insureds** involved;

(iii)  a description of the injury or **Damages** that may result from the **Occurrence**, **Wrongful Act** or **Circumstance;**

(iv)  the manner in which you first became aware of the **Occurrence**, **Wrongful Act**, **Circumstance;** and

(v)  the reasons you believe it may result in a **Claim.**

2. **Notice of Claim (Including a Suit)**

a. As a condition precedent to any right to coverage under this Policy, you must give us written notice of any **Claim** (including any **Suit**) first made against any **Insured** during the **Policy Period** or any applicable Extended Reporting Period as soon as practicable thereafter, but in no event later than:

(i)  with respect to a **Claim** first made during the Policy Period, thirty (30) days after the Policy expiration date; or

    (ii)  with respect to a **Claim** first made during an Extended Reporting Period, thirty (30) days after such **Claim** is first made.

b.  You and any other involved **Insured** must also:

    (i)  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **Claim** or **Suit**;

    (ii)  authorize us to obtain records and other information;

    (iii)  cooperate with us in the investigation or settlement of the **Claim** or defense against the **Suit**; and

    (iv)  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

c.  No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

d.  Failure of an agent or **Employee** of the **Insured**, other than your **Executive Officers,** members of your legal or risk management departments or other persons responsible for your insurance administration, to notify us of an **Occurrence**, **Wrongful Act**, **Circumstance**, **Claim** or **Suit** that such person knows about will not affect the insurance afforded to you.

B.  **Claim Made Date; Wrongful Acts Deemed Related**

A **Claim** will be deemed to have been made at the earlier of the following times:

1.  when any **Executive Officer**, member of your legal or risk management departments or ay other person responsible for your insurance administration first receives written notice of such **Claim**; or

2.  when we receive written notice of such **Claim**.

All **Claims** for **Damages** arising out of **Bodily Injury** to the same person, including **Damages** claimed by any person or organization for care, loss of services or death resulting at any time from such **Bodily Injury**, will be deemed to be one **Claim** and one **Occurrence**, regardless of the number of claimants and the number of **Insureds** against whom such **Claim** is made. Such **Claim** will be deemed to have been made at the time the first of those **Claims** is made against any **Insured**.

All **Claims** for **Damages** arising out **Property Damage** causing loss to the same person or organization will be deemed to be one **Claim** and one **Occurrence,** regardless of the number of claimants and the number of **Insureds** against whom such **Claim** is made. Such **Claim** will be deemed to have been made at the time the first of those **Claims** is made against any **Insured**.

All **Claims** for **Damages** arising out of one **Wrongful Act** or **Related Wrongful Acts** shall be deemed to be one **Claim**, regardless of the number of claimants or the number of **Insureds** against whom such **Claims** are made. Such **Claim** will be deemed to have been made at the time of the first of those **Claims** is made against any **Insured**.

C.  **Legal Action Against Us**

No person or organization has a right under this Policy:

1.  to join us as a party or otherwise bring us into a **Suit** seeking **Damages** from an **Insured**; or

2.  to sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an **Insured**, obtained after an actual trial or civil proceeding, or arbitration or other alternative dispute resolution proceeding; but we will not be liable for remedies that are not payable under the terms of this Policy or for amounts that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the **Insured** and the claimant or the claimant's legal representative.

D. **Other Insurance**

If other valid and collectible insurance is available to you for a loss we cover under this Policy, our obligations are limited as follows:

1. **Primary Insurance**

   This insurance is primary except when paragraph 2 below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph 3 below.

2. **Excess Insurance**

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   a. that is effective prior to the beginning of the **Policy Period** shown in the Declarations of this insurance and applies to **Bodily Injury**, **Property Damage** or **Damages** on other than a claims-made and reported basis, if:

      (i) no Retroactive Date is shown in the Declarations to this Policy; or

      (ii) the other insurance has a **Policy Period** which continues after the Retroactive Date shown in the Declarations of this insurance;

   b. that is a local foreign admitted policy which is a claims-made policy effective during the **Policy Period** or an occurrence based policy which provides coverage for the **Claim** at issue.

   When this insurance is excess, we will have no duty to defend the **Insured** against any **Suit** if any other insurer has a duty to defend the **Insured** against that **Suit**.  If no other insurer defends, we will undertake to do so, but we will be entitled to the **Insured's** rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   a. the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   b. the total of all deductible and self-insured amounts under all that other insurance.

   We will share the remaining loss, if any, with any other insurance that is not described in this Excess insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

3. **Method of Sharing**

   If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

   If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

E. **Premium Payment; Premium Audit and Total Advance Premium**

1. The first **Named Insured** shown in the Declarations is responsible for the payment of all premiums, and will be the payee for any return premiums we pay.

2. We will compute all premiums for this Policy in accordance with our rules and rates.

3. The premium shown as the Total Advance Premium on the Declarations is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premiums may be required for any additional exposures and/or **Insureds** or as provided for in Condition I. Cancellation. If the Policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Total Advance Premium, the first **Named Insured** will pay the difference to us, due and payable upon notice. If the earned premium is less than the Total Advance Premium, we will retain the Total Advance Premium.

4. The first **Named Insured** must keep records of the information we need for premium computation and send us copies at such times as we may request.

**F. Representations**

By accepting this Policy, you agree that:

1. the statements in the application are accurate and complete;

2. those statements are based upon representations you made to us; and

3. we have issued this Policy in reliance upon your representations.

**G. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first **Named Insured**, this insurance applies:

1. as if each **Named Insured** were the only **Named Insured**; and

2. separately to each **Insured** against whom **Claim** is made or **Suit** is brought.

**H. Transfer of Rights of Recovery Against Others to Us**

If the **Insured** has rights to recover from another party all or part of any payment we have made under this Policy, those rights are transferred to us. We will waive our subrogation rights against your client to the extent that, prior to a **Circumstance, Claim** or **Suit**, you had a written agreement to waive such rights. The **Insured** must do nothing after loss to impair our rights. At our request, the **Insured** will bring **Suit** or transfer those rights to us and help us enforce them.

**I. Cancellation**

1. The first **Named Insured** shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least:

    a. ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. ninety (90) days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first **Named Insured** at the last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

5. If this Policy is cancelled, we will send the first **Named Insured** any premium refund due. If we cancel, the refund will be pro rata. If the first **Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**J.   Changes**

This Policy and any attached endorsements contain all the agreements between you and us concerning the insurance afforded.  The first **Named Insured** shown in the Declarations is authorized to make changes in the terms of this Policy with our consent.  This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**K.   Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this Policy at any time during the **Policy Period** and up to three years afterward.

**L.   Inspections and Surveys**

We have the right, but are not obligated to:

1.   make inspections and surveys at any time;

2.   give you reports on the conditions we find; and

3.   recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**M.   Transfer Of Your Rights and Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent, except in the case of death of an individual **Insured**.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, any one having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**N.   Change in Control**

1.   If the first **Named Insured** designated in the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2.   if any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this Policy will continue in full force and effect as to any **Bodily Injury, Property Damage** or **Wrongful Act** that occurred prior to the effective date of such transaction.  There will be no coverage afforded by this Policy for any **Bodily Injury, Property Damage** or **Wrongful Act** that occurs on or after the effective date such transaction.

**O.   Service of Suit**

The Underwriter hereby designates the Director of the Department of Insurance in the state in which this Policy is issued, and his/her successor(s) in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** arising under or out of this Policy.

**P.   Adverse Events Reporting**

Reporting an **Adverse Event** to us, another insurer or a governmental or regulatory authority, in itself, does not constitute:

1.   a conclusion that **Your Product** caused or contributed to such event;

2.   an admission or assumption of liability;

3. a notice as described under Condition A1, Notice of **Circumstances**;

4. knowledge of a circumstance that would be expected to result in payment under this insurance; or

5. that injury or damage was expected or intended.

Q. **Bankruptcy**

Your bankruptcy or insolvency will not relieve us of our obligations under this Policy.

## SECTION VI. EXTENDED REPORTING PERIODS

A. We will provide one or more Extending Reporting Periods, as described below, if:

1. this Policy is cancelled (for any reason other than non payment of premium) or not renewed; or

2. we renew or replace this Policy with insurance that:

   a. has a Retroactive Date later than the date shown in the Declarations; or

   b. does not apply on a claims-made and reported basis.

B. The Extended Reporting Periods described in this Condition will not extend the **Policy Period** or change the scope of coverage provided. They apply only to **Bodily Injury**, **Property Damage** or a **Wrongful Act** that occurs on or after the applicable Retroactive Date shown in the Declarations and before the end of the **Policy Period**. Once in effect, Extended Reporting Periods may not be cancelled.

C. A 60 Day Basic Extended Reporting Period is automatically provided for no additional charge. This period starts at the end of the **Policy Period** and lasts for sixty days. The Basic Extended Reporting Period does not apply to **Claims** that are covered under any subsequent insurance you purchase, or that would be covered by such insurance, but for exhaustion of the amount of insurance applicable to such **Claims**.

D. A Supplemental Extended Reporting Period of 7 years is available, but only by an endorsement and for an extra charge to be determined by us. This Supplemental Extended Reporting Period starts when the Basic Extended Reporting Period, set forth in Paragraph C. above, ends.

You must request the Supplemental Extended Reporting Period endorsement in writing within sixty (60) days of the expiration date of the **Policy Period**. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due. We will determine such additional premium in accordance with our rules and rates then in effect. In doing so, we may take into account the following:

1. the exposures insured;

2. previous types and amounts of insurance;

3. limits of Insurance available under this Policy for future payment of damages; and

4. other related factors.

The additional premium will not exceed 250% of the annual premium for this Policy.

The endorsement shall set forth the terms, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for **Claims** first made during such period will be excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

E. Neither the Basic Extended Reporting Period nor the Supplemental Extended Reporting Period renews, reinstates or increases the Limits of Insurance.

## SECTION VII. DEFINITIONS

A. **Adverse Event** includes any:

1. of the following types of outcomes in any person, regardless of whether or not such outcome is expected or intended:

   a. congenital anomaly or birth defect;

      b.   death;

      c.   disability or incapacity;

      d.   hospitalization; or

      e.   life threatening disease, injury or sickness;

   2.   intervention to prevent any outcome described in Paragraph 1. above;

   3.   malfunction of **Your Product** that may give rise to any outcome described in paragraphs 1a. or 1b. above; or

   4.   condition that may give rise to any outcome described in paragraphs 1(a-c) above, requiring notification to a governmental or regulatory authority.

B.  **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   1.   notices that are published include materials placed on the Internet or on similar electronic means of communication; and

   2.   regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an **Advertisement**.

C.  **Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.  But **Auto** does not include **Mobile equipment**.

D.  **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental injury and mental anguish resulting from any of these at any time. **Bodily injury** also means bodily injury, sickness, disease, mental injury or mental anguish sustained by any relative of that person as result of such **Bodily Injury**.

E.  **Circumstance** means an **Occurrence**, event, situation, act, error or omission which you reasonably expect might lead to a **Claim**.

F.  **Claim** means a written demand for **Damages,** services or other non-monetary relief. A **Claim** includes a **Suit**.

G.  **Class I Recall** means:

   1.   a **Class I Product Recall** as defined by the applicable governmental authority in the United States; or

   2.   any equivalent recall provisions outside of the United States, which provisions address the:

      a.   removal from the market of:

         (i)   **Your Product**;

         (ii)  a product in which **Your Product** is a component; or

         (iii) a product on which **Your Work** was performed; or

      b.   a correction of such product because there is a reasonable probability that the continued use of, or exposure to such product, without correction, will cause serious adverse health consequences or death.

Such recall or removal may be taken voluntarily by or on behalf of the **Insured**, or required by a government entity acting in accordance with applicable federal, state, regional or local law.

H.  **Cognitively Impaired** means suffering from any:

   1.   alcohol or "drug" dependency;

   2.   degenerative disease affecting the brain;

   3.   dementia or other similar disorder;

   4.   disabling physical handicap;

   5.   developmental disability, developmental delay or other similar disorder;

6.   neurosis, psychosis or other similar disorder;

7.   terminal physical illness; or

8.   other condition, disease, injury or sickness that diminishes a human being's capacity for judgment or reasoning.

I.   **Cosmetic** means an article that is intended to be applied to the human body for altering appearance, beautifying, cleansing or promoting attractiveness.

J.   **Coverage Territory** means:

1.   the United States of America (including its territories and possessions), Canada or Puerto Rico;

2.   international waters or airspace, provided the **Bodily Injury, Property Damage** or **Wrongful Act** does not occur in the course of travel or transportation to or from  any place not included in paragraph (a) above; or

3.   elsewhere in the world;  However:

      a.   if coverage for a **Claim** or **Suit** under this Policy is in violation of any of the United States of America's economic or trade sanctions laws or regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that **Claim** or **Suit** shall be null and void; and

      b.   we have the option, but not the duty, to investigate any **Claim** made, or defend any **Suit** brought, in a foreign jurisdiction (as used here, a foreign jurisdiction is a jurisdiction besides the United States of America, Canada or Puerto Rico).  However, we will reimburse the **Named Insured** for **Damages** or **Defense Expenses** it incurs with our permission on such foreign **Claim** or **Suit** if and to the extent such **Damages** and **Defense Expenses** are covered.  This insurance is specifically excess of any local foreign admitted policy in place and applicable to such **Claim** or **Suit**.

K.   **Damages** mean compensatory damages in excess of the applicable Deductible or Self-Insured Retention and within the applicable Limit of Liability which are incurred by any **Insured** with the Company's prior written consent. **Damages** do not include:

1.   civil or criminal fines, sanctions, penalties or forfeitures;

2.   the multiplied portion of multiplied damage awards;

3.   non-monetary, injunctive, declaratory or equitable relief or amounts owing in order to effectuate such relief;

4.   the return, refund or restitution of fees or other charges for **Your Product**, **Your Work** or your services;

5.   amounts incurred to modify, redesign or correct **Your Product**, **Your Work** or your services, other than expenses covered under Insuring Agreement D.

6.   amounts that are not insurable under any applicable law; or

7.   plaintiff's attorney fees associated with any of the remedies listed in (1) through (6) above.

L.   **Defense Expenses** mean the reasonable fees of attorneys, experts and consultants and other costs and expenses incurred in investigating a **Claim** or defending a **Suit** (other than costs and expenses of our **Employees**). **Defense Expenses** also include:

1.   up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **Bodily Injury** liability coverage applies. (We do not have to furnish these bonds);

2.   the cost of bonds to release attachments, but only for bond amounts within the applicable limit of liability.  (We do not have to furnish these bonds);

3.   all reasonable expenses incurred by you at our request to assist us in the investigation or defense of the **Claim** or **Suit**, including actual loss of earnings up to $250 a day because of time off from work;

4.   all costs imposed against you in the **Suit**;

     5.  pre-judgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any pre-judgment interest based on that period of time after the offer; and

     6.  all interest on the full amount of the covered portion of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the covered portion of the judgment that is within the applicable limit of liability.

M. **Device family** means a **Medical Device** or a group of such devices manufactured by or for the same organization and having the same basic design and performance characteristics and intended function and use.

N. **Drug** means a biologic or synthetic article, other than conventional food, that is intended to achieve a chemical action upon or within the human body:

     1.  for use in the cure, diagnosis, mitigation, prevention or treatment of disease, injury or sickness in human beings;

     2.  to affect any function or structure of the human body; or

     3.  that is recognized as such in the official:

          a.  *Homeopathic Pharmacopoeia*;

          b.  *National Formulary*;

          c.  *United States Pharmacopoeia*; or

          d.  supplements to any of these.

O. **Employee** means any person who is on the **Insured's** regular payroll, with federal and/or state taxes withheld, and whose labor or service is engaged by and directed by the **Insured**. **Employee** includes a **Leased Worker**, but does not include a **Temporary Worker** or an independent contractor. An **Employee's** status as an **Insured** will be determined as of the date of the **Occurrence** or **Wrongful Act** upon which a **Claim** involving the **Employee** is based.

P. **Executive Officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

Q. **Healthcare Fraud and Abuse** means any actual or alleged:

     1.  fraud, abuse or false claim with respect to,

     2.  overbilling, overpayment, recoupment, miscoding or improper processing in connection with, or

     3.  any other failure to comply with any terms, conditions, laws, rules, regulations, procedures or other requirements of or relating to,

any federal, state or local health insurance plan or program, including without limitation the Medicare, Medicaid and Social Security programs, regardless of whether such conduct is intentional, negligent or otherwise.

R. **HIPAA Violation** means any proceeding brought by a government entity (other than proceedings in the ordinary course of the **Insured's** business) alleging a violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

S. **Hostile Fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

T. **Human Clinical Trial** means testing of a **Life Sciences Product** upon or within human beings to establish the effectiveness or safety of such **Life Sciences Product**, and includes providing information necessary to obtain the informed consent of human beings to participate in such testing and other activities taken in connection with the testing, provided that:

     1.  the **Insured** makes all filings required by law or regulations and receives all necessary authorizations in connection therewith;

     2.  the trial is approved by the appropriate **Institutional Review Board** or similar body; and

     3.  the **Insured** has not recklessly or willfully violated or consented to any violation of any agreement, contract, law, procedure, protocol or regulation applicable to the conduct of the trial.

U. **Human Clinical Trials That Must Be Underwritten And Approved To Be Covered** means **Human Clinical Trials** that the **Insured** sponsors, co-sponsors or works on, or for which the **Insured** has assumed any obligation assigned to a sponsor under any applicable law or regulation, that involve trial participants who, during any part of the trial or consent period, are **Cognitively Impaired**, pregnant, or under 18 years of age.

This definition does not apply to a trial that has been described to us by you in the application for this insurance, to the extent that we have agreed to provide coverage in connection with such trial.

V. **Impaired Property** means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

    1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    2.  you have failed to fulfill the terms of a contract or agreement;

    3.  if such property can be restored to use by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**, or your fulfilling the terms of the contract or agreement.

W. **Information and Network Technology Product** means:

    1.  communication, computer, electronic, Internet, information, network or website;

        a.  equipment or parts;

        b.  programs or systems; and

    2.  software, data or other information that is in electronic form.

X. **Information and Network Technology Service** means analysis, design, integration, management, maintenance, processing, programming, repair or support services in connection with an **Information and Network Technology Product**.

Y. **Institutional Review Board** means a board, committee, group or similar organization or an ethics committee designated, directed or requested by an institution or other person or organization to review a **Human Clinical Trial**, including any approval or periodic review of any such **Human Clinical Trial**.

Z. **Insured** means the **Named Insured** and any other person or organization that qualifies as such under Section III of this Policy.

AA. **Insured Contract** means:

    1.  a contract for lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **Insured Contract**;

    2.  a sidetrack agreement;

    3.  any easement or license agreement;

    4.  an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    5.  an elevator maintenance agreement;

    6.  that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay damages for a **Wrongful Act** or for **Bodily Injury** or **Property Damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An **Insured Contract** does not include:

        a.  an oral contract or agreement;

    b.  that part of any contract or agreement that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        (i)  preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, design or specifications; or

        (ii)  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    c.  that part of any contract or agreement that indemnifies any party for fire damage to premises rented or loaned to you.

BB.  **Intellectual Property Law or Right** means any:

    1.  certification mark, copyright, patent or trademark (including collective or service marks);

    2.  right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

    3.  other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

    4.  other judicial or statutory law concerning piracy, unfair competition or other similar practices.

CC.  **Leased Worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. **Leased Worker** does not include a **Temporary Worker**.

DD.  **Life Sciences Product** means a **Cosmetic**, **Drug** or **Medical Device**.

EE.  **Life Sciences Product Sales Contractor** means a person or organization engaged to provide service, advice or instruction in connection with the dispensing, distribution, furnishing or sale of a **Life Sciences Product.**

FF.  **Life Sciences Product Services** means clinical, design or developmental review, laboratory, research service, or advice or instruction in connection with a **Life Sciences Product**.

GG.  **Life Sciences Product Services Contractor** means a person or organization engaged to provide **Life Sciences Product Services**.

HH.  **Loading or Unloading** means the handling of property:

    1.  after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **Auto**;

    2.  while it is in or on an aircraft, watercraft or **Auto**; or

    3.  while it is being moved from an aircraft, watercraft or **Auto** to the place where it is finally delivered; but **Loading or Unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **Auto**.

II.  **Medical Device** means an apparatus, contrivance, implant, implement, instrument, in vitro reagent, machine or other similar or related article, including an accessory, component or part, that is:

    1.  intended for use in the cure, diagnosis, mitigation, prevention or treatment of disease, injury or sickness in human beings;

    2.  intended to affect any function or structure of the human body; or

    3.  recognized as such in the official:

        a.  National Formulary;

        b.  United States Pharmacopoeia; or

        c.  supplements to any of these;

which does not achieve any of its primary intended purposes through chemical action upon or within the human body and which is not dependent upon being metabolized for the achievement of any of its primary purposes.

JJ. **Medical Expenses** mean expenses incurred for treatment administered to a **Human Clinical Trial** participant at the time of or after an approved **Human Clinical Trial**.  However, such expenses do not include any amounts incurred for any planned concurrent treatment of side effects as set forth in the clinical trial protocol.

KK. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads:

2.  vehicles maintained for use solely on or next to premises you own or rent;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers or rollers.

5.  vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

    a.  equipment designed primarily for:

        (i)  snow removal;

        (ii) road maintenance, but not construction or resurfacing; or

        (iii) street cleaning;

    b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers;  and

    c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

LL. **Medical Services** means medical or other health care services or treatment provided to any individual; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, dental or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies.

MM. **Mold** means mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever.

NN. **Named Insured** means the person or organization whose name appears in Item 1 of the Policy Declarations.

OO. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

PP. **Personal and Advertising Injury** means injury, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.  oral or written publication, in any manner, of material that slanders or libel's a person or organization or disparages a person's or organization's good, products or services;

5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  the use of another's advertising idea in your **Advertisement**; or

7.  infringing upon another's copyright, trade dress or slogan in your **Advertisement.**

QQ. **Personal Information Protection** means maintaining the confidentiality of information regarding **Medical Services** or information obtained in the provision of **Professional Services** and limiting the release or use of such information in conformance with requirements of law.

RR. **Personal Information Protection Event** means any **HIPAA Violation**, or any other failure to maintain the confidentiality of information regarding **Medical Services** or other information obtained in the provision of **Professional Services** or unauthorized release or use of such information.

SS. **Personal Information Protection Event Expenses** mean reasonable fees and costs of attorneys, experts and consultants (not including third-party media consultants) incurred in the management or investigation of an actual or alleged **Personal Information Protection Event**. **Personal Information Protection Event Expenses** include costs incurred to notify affected parties of the confidentiality breach and for credit monitoring, if applicable. **Personal Information Protection Event Expenses** do not include any remuneration, salaries or benefit expenses of the **Insured** or any regulatory or administrative fines or penalties imposed upon an **Insured** as a result of a **Personal Information Protection Event.**

TT. **Policy Period** means the period of time from the inception of the Policy to the earliest of the expiration date or effective date of a cancellation, if any.

UU. **Pollutants** mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, biological and other etiologic agents or materials, genetically engineered materials, teratogenic, carcinogenic and mutagenic materials and waste.   Waste includes material to be recycled, reconditioned, or reclaimed.

VV. **Products-Completed Operations Hazard**:

1.  includes all **Bodily Injury** and **Property Damage** occurring away from premises you own, occupy or rent and arising out of **Your Product** or **Your Work,** except:

    a.  products that are still in your physical possession; or

    b.  work that has not yet been completed or abandoned.  However, **Your Work** will be deemed completed at the earliest of the following times:

        (i)  when all of the work called for in your contract has been completed;

        (ii)  when all of the work to be done at the job site has been completed if your contract calls for   work at more than one job site; or

        (iii)  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2.  does not include **Bodily Injury** or **Property Damage** arising out of:

    a.  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the **Loading or Unloading** of that vehicle by any **Insured**;

    b.  the existence of tools, uninstalled equipment or abandoned or unused materials; or

3. with respect to **Human Clinical Trials** covered under this Policy, **Bodily Injury** or **Property Damage** arising out of **Your Product** used in such trial, whether or not in your physical possession, is included within the **Products-Completed Operations Hazard**.

WW. **Professional Services** means services of a professional nature performed by you or any other **Insured** on your behalf, including advice given by you with respect to the use of **Your Product** or **Your Work** for a fee, remuneration or other consideration in connection with a **Life Sciences Product**.

XX. **Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

For purposes of this insurance, tangible property does not include any electronic data. Electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

YY. **Related Wrongful Acts** means two or more **Wrongful Acts** involving the same or related facts, circumstances, situations, events, transactions, causes or the same or related series of facts, circumstances, situations, events, transactions or causes, whether related logically, causally, or in any other way. **Related Wrongful Acts** will be deemed to have occurred at the time of the earliest such **Wrongful Act** took place.

ZZ. **Subject** means any human being who enrolls as a participant in a **Human Clinical Trial** to which this insurance applies.

AAA. **Suit** means a civil proceeding seeking recovery of **Damages** (or **Damages** plus services or other non-monetary relief) because of a **Wrongful Act**, **Bodily Injury** or **Property Damage** to which this insurance applies. **Suit** includes a civil legal proceeding as well as an arbitration proceeding or alternative dispute resolution proceeding in which such **Damages** are claimed and to which the insured must submit or does submit with our consent.  **Suit** does not include a criminal proceeding.

BBB. **Temporary Worker** means a person who is furnished to you to substitute for a permanent **Employee** on leave or to meet seasonal or short-term workload conditions.

CCC. **Volunteer Worker** means a person who is not your **Employee**, and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

DDD. **Withdrawal Expenses** means reasonable and necessary expenses to effectuate a **Class 1 Product Recall** and regain control over **Your Products**, including but not limited to:

1. costs and expenses incurred on communications and notices to the public, regulators or direct accounts, regarding the recall, whether in broadcast, electronic, printed or internet format;

2. costs and expenses incurred to transport, store and dispose of **Your Products**, as a result of the recall; and

3. costs and expenses incurred over and above the normal salaries and expenses of **Your Employees**, provided such costs and expenses are necessary to:

   a. ensure the recall is completed within a reasonable time; or

   b. remove **Your Product** from a specific location or another product in which **Your Product** is a component part.

4. fees paid to public relations or other consultants to implement the recall in a manner designated to minimize the economic impact of the recall on the **Insured**; and

5. fees paid to attorneys or consultants retained to challenge government communications requesting or ordering a **Class I Product Recall**, provided that you obtain our written consent before incurring such fees.

**Withdrawal Expenses** do not include the cost of removing **Your Product** from a person in which such product has been medically implanted.

EEE. **Your Product** means:

1. any goods or products, including **Information And Network Technology Products** and **Life Sciences Products**, other than real property, which are manufactured, sold, handled, distributed or disposed of by:

    a. you;

    b. others trading under your name; or

    c. a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products;

3. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

4. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

FFF. **Your Work** means:

1. work or operations, including **Information and Network Technology Services** and **Life Sciences Product Services,** performed by you or on your behalf or a person or organization whose business or assets you have acquired; and

2. materials, parts or equipment furnished in connection with such work or operations.

3. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

4. the providing of or failure to provide warnings or instructions.

GGG. **Wrongful Act** means any actual or alleged negligent act, error or omission in the rendering of, or failure to render **Professional Services** to which this insurance applies.

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either below or on the Declarations page of the policy.

Ironshore Specialty Insurance Company by:

Secretary                                                        President



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 1

**Policy Number:** 002539202                                    **Effective Date of Endorsement:** July 01, 2017
**Insured Name:**  Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MANDATORY DESIGNATED PRODUCTS EXCLUSION (PRIMARY)

In consideration of the premium charged, it is agreed to and understood that Section IV. EXCLUSIONS B. Exclusions Applicable to Products – Completed Operations Liability Insurance, EXCLUSION 7. Other Products is amended by adding the products listed below:

p. Metoclopramide / Reglan
q. Propoxyphene / Darvon / Darvocet
r. Fentanyl / Fentanyl Patches
s. Yaz / Yasmin
t. Pioglitazone HCl (Actos)
u. Bisphosphonates (Fosamax)

All other terms and conditions of this Policy remain unchanged.

_____                    August 11, 2017
Authorized Representative                                    Date



## IRONSHO E PECIA TY I URANC CO PANY
### Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement # 2**

**Policy Number:** 002539202
**Insured Name:** Rodan & Fields, LLC

**Eff ive ate of Endorsement:** July 01, 2017

### H S ENDO SE ENT CHANGES THE POLICY PLEASE RE D T CAREFULLY.

## AM ND DEFINITION FOR BOD LY JURY

In c nside ation of the premium charged, it is understood and agreed that **SEC ON VII. EFINITIONS**, D. **Bodily Injury** is amended to read as follows:

D.   **Bodily Injury** eans bo ily inj r sickness or disease us ained by a p o including death resulting from any of these at any ime; mental a guish, in uding emotiona di ress or humiliation; mental illness; or mental injury. **Bod ly njury** also means bodily injury, si ess dis as , mental injury or mental anguish sustain d b any re ative of that person as a result of such **Bodily Injury**.

All other terms and conditions of this Policy remain unchanged.

**Authorized Representative**

August 11, 2017
Date



**IRONSHO E PECIA TY I URANC CO PANY**

**Mailing Address:**
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

**Endorsement # 3**

**Policy Number:** 002539202
**Insured Name:** Rodan & Fields, LLC

**Eff ive ate o Endorsement:** July 01, 2017

H S ENDO SE ENT CHANGES THE POLICY PLEASE RE D T CAREFULLY.

# PRIMARY ND NON-CONTRIBUTORY ENDORSEMENT – RODUCTS/CO P ETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE

In considerati n f the premium ar ed, it is understood and agreed that h fol owi p ragraph is added to **Section V. CONDITIONS.** D. **Other Insurance**, (1). Primary Insurance:

If you spe ifically agree i written contract or agreement that he insurance aff d :o an additional insured under Insuring Agreement A. Pro uct C m leted O erations Bod I Inj y and P op y Damage Liability Insurance must apply on a primary as s, or a p imary and non-co tributory b s s, coverage provi ed nder n u ing Agreement A. is primary to other insu an e that is availabl to such addit onal insured which covers s ch a di ional insured as a named insured, and we ill ot share with that oth r insurance, provided that the **Bodily Injury** or **Prop y Damage** for which coverage is sought is caused by an **Occurrence** that takes place subsequent t the s gning and executio of that contract or agreement by you.

All other terms and conditions of this Policy remain unchanged.

_____
**Authorized Representative**

August 11, 2017
**Date**



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 4

**Policy Number:** 002539202                                              **Effective Date of Endorsement:** July 01, 2017
**Insured Name:** Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BATCH OCCURRENCE ENDORSEMENT

**SECTION V. CONDITION B** is amended to include the following:

1.  All **Claims** arising out of **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** to two or more persons, organizations or properties which is directly or directly attributable to the same actual or alleged event, condition, cause, defect, hazard, advice or decision in the design, formulation, manufacturing, distribution, sale, testing, use, operation, maintenance, repair or replacement of **Your Product** or **Your Work**, will be deemed to be one **Claim** and one **Occurrence**,  regardless of when and where injury occurs or the number of **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** will be deemed to be one **Claim** and one **Occurrence** (hereinafter referred to as "**Batch Occurrence**").  All **Claims** for **Damages** from the **Batch Occurrence** shall be deemed to have been made at the time the first of those **Claims** was made against any **Insured**, subject always to the following provisions:

    a.  If the first **Claim** for **Damages** arising from a **Batch Occurrence** is first made against an **Insured** during the **Policy Period** (or the 60 Day Basic Extending Reporting Period, if applicable), subsequent **Claims** arising out of that **Batch Occurrence** shall attach against the insurance stated in the Declarations, regardless of whether such subsequent **Claims** are made during the **Policy Period** or at any time thereafter. This Endorsement shall not be construed to increase or reinstate the Limits of Liability of the Policy. If any **Claim** arising from a **Batch Occurrence** is covered under another policy, including a prior policy, this Policy will not cover any **Bodily Injury**, **Property Damage** or **Personal and Advertising Injury** arising there from.

Subject to the provisions of SECTION V. of the Policy, you shall still retain the right to purchase the Supplemental Extended Reporting Period, but this Supplemental Extended Reporting SHALL IN NO EVENT APPLY to any **Claims** which attach under a **Batch Occurrence** outlined in the preceding paragraph.


All other terms and conditions of this Policy remain unchanged.


_____                    August 11, 2017
  Authorized Representative                                   Date



## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 5

**Policy Number:** 002539202                                              **Effective Date of Endorsement:** July 01, 2017
**Insured Name:**  Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FOREIGN CLINICAL TRIAL WORLDWIDE COVERAGE ENDORSEMENT WITH EXCESS/DIC COVERAGE FOR LOCAL POLICY CLAIMS

In consideration of the premium charged, it is agreed and understood that with respect to **Foreign Clinical Trials** only:

A.    **SECTION I – INSURING AGREEMENTS,** is amended to add the following paragraph:

H.   Solely with respect to **Local Policy Claims**, this Policy is written as Excess/Difference in Conditions Insurance and shall apply:

1.   in excess of, and shall not contribute to, any **Covered Loss** paid under any **Local Policy.  However,** in the event that:

a.   part or all of the **Covered Loss** would be payable under any **Local Policy**, but the limits of liability of such **Local Policy** have been exhausted by reason of payments made thereunder; or

b.   part of a **Covered Loss** is paid by a **Local Policy**,

then we shall be liable up to its limits of liability, only for that part of such **Covered Loss** in excess of the amount paid under such **Local Policy**, and in excess of the amount of any self-insured retention or deductible under such other policy.

2.   as primary insurance, subject to the Policy's own terms, conditions and exclusions but only if:

a.   the **Local Policy** does not cover such **Covered Loss**, or

b.   such **Covered Loss** should have been paid by the **Local Policy**, but it fails to do so in which case we shall be subrogated to all of your rights against such insurer. You will immediately

LFS.057 (8.15 ed)                                                                          Page 1 of 3

reimburse us for all payments made as a result of such failure upon your recovery of such payment from the insurer of the **Local Policy**.

B.     **SECTION I – INSURING AGREEMENT, G – DEFENSE OF SUITS AND PAYMENT OF DEFENSE EXPENSES UNDER INSURING AGREEMENTS A AND B** is amended to add the following paragraph:

    4.   Notwithstanding anything to the contrary in this Section, with respect to any **Claim** (whether or not a **Local Policy Claim**) brought in a **Foreign Jurisdiction**:

      a.   you, and not we, shall be obligated to assume charge of and pay the costs of the investigation and defense of any such **Claim**. We, however, have the right to approve in writing the retention of any defense counsel or to participate with the **Insured** in the choice of arbitrators or mediators. We also have the right to be kept fully informed, or have our designated representative kept fully informed, by you concerning the conduct of such defense or such arbitration or mediation. You shall not settle any such **Claim** without our prior written consent;

      b.   we will reimburse the **Insured**, or, in our sole discretion, pay, on the **Insured's** behalf, those sums that the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** to which this insurance applies; and

      c.   you shall make available to us such information and access to records as we shall require. All **Claims Expenses** are included within and erode our limits of liability.

C.     Solely with respect to any **Local Policy Claims**, **SECTION V – CONDITIONS, D – Other Insurance** is deleted in its entirety

D.     The following new conditions are added to **SECTION V – CONDITIONS**:

    R.   **Coverage Disputes**

      Any disputes between the **Insured** and us as to whether there is coverage under this policy must be filed in the courts of the United States of America, Puerto Rico or Canada.

    S.   **Not Admitted Insurance**

      It is agreed that this insurance is not a substitute for any admitted insurance required by any **Foreign Jurisdiction.** We assume no responsibility for the furnishing of certificates, evidence of insurance, or bonds in any country in which we are not an admitted or authorized insurer. We shall not be liable for any fine or penalty imposed any **Insured** under this Policy, for failing to obtain insurance from an admitted or authorized insurer, nor for any other failure to comply with an insurance law of a jurisdiction in which we are not an admitted or authorized insurer.

    T.   **Applicable Currency**

      All premiums, limits, retentions, **Covered Loss** and other amounts under this Policy are expressed and payable in United States of America currency. If any judgment, settlement or any part of **Covered Loss** is expressed or calculated in any other currency, payment of such **Covered Loss** due under this Policy will be made in the currency of the United States of America, at the rate of exchanged published in The Wall Street Journal on the date of the **Insured's** obligation to pay such **Covered Loss** is established, or, if not published on that date, on the date of the next publication.

E.  Solely with respect to **Local Policy Claims**, **SECTION II – LIMITS OF LIABILITY AND DEDUCTIBLES OR SELF-INSURED RETENTIONS** is amended to add the following new paragraph:

The applicable Limits of Liability of this Policy, as set forth on the Declarations, shall be reduced by any amount paid by the **Company** under this Policy and paid under any **Local Policy** issued by the **Company** or any affiliate of the **Company**.

The per-**Claim** deductible amount is waived to the extent of and by the amount of any payment of **Covered Loss** paid by any **Local Policy**.

F.  The following new definitions are added to **SECTION VII – DEFINITIONS** :

HHH.  **Local Policy** means any policy issued in a **Foreign Jurisdiction** that provides required coverage in such jurisdiction.

III.  **Local Policy Claims** means any **Claim**:

1.  subject to the laws of a **Foreign Jurisdiction** where a **Local Policy** is issued;

2.  arising out of **Wrongful Acts** or **Bodily Injury, Property Damage** or **Personal or Advertising Injury** that take place in such **Foreign Jurisdiction**

3.  where legal proceedings with respect to such **Claim** are brought in such **Foreign Jurisdiction**; and

4.  where such **Local Policy** is in force on date such **Claim** is made.

JJJ.  **Covered Loss** means **Damages** and **Claim Expenses** arising from a **Claim** covered under the terms and condition of this Policy.

KKK.  **Foreign Jurisdiction** means any jurisdiction, other than jurisdiction of the United States, or any of its territories or possessions or Puerto Rico, or any Canadian jurisdiction.

LLL.  **Foreign Clinical Trial** means the testing of a **Life Science Product** upon or within human beings in a **Foreign Jurisdiction** to establish the effectiveness or safety of such **Life Sciences Products** and includes providing information necessary to obtain the informed consent of human beings to participate in such testing and other activities taken in connection with the testing provided that:

1.  The **Insured** makes all filings required by law or regulations and receives all necessary authorizations in connection therewith;

2.  the trial is approved by the appropriate **Institutional Review Board**;

3.  the **Insured** has not recklessly or willfully violated or consented to any violation of any agreement, contract, law, procedure, protocol or regulation applicable to the conduct of the trial.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THIS POLICY REMAIN UNCHANGED.

_____                    August 11, 2017
Authorized Representative                                   _____
                                                           Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 6

**Policy Number:** 002539202                                    **Effective Date of Endorsement:** July 01, 2017
**Insured Name:**  Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OMNIBUS NAMED INSURED ENDORSEMENT

In consideration of the premium charged, **Section III. D. Newly Acquired or Created Organization**s is deleted and replaced with the following:

**D.   Omnibus Named Insured**

It is understood and agreed that the **Named Insured** includes any and all past, present or hereafter formed or acquired subsidiary companies, corporations, firms or organizations (excluding partnerships and joint ventures) which are owned, financially controlled or under management control by you and for which you are obligated to provide insurance.  However, coverage does not apply to **Bodily Injury**, **Property Damage**, or **Wrongful Acts** that occurred before you acquired or formed the organization.

All other terms and conditions of this Policy remain unchanged.

_____                    August 11, 2017
Authorized Representative                                           Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 7**

**Policy Number:** 002539202             **Effective Date of Endorsement:** July 01, 2017
**Insured Name:**  Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MOST FAVORABLE VENUE FOR PUNITIVE DAMAGES

In consideration of the premium charged:

**SECTION VII. DEFINITION**, K. **Damages** is deleted in its entirety and replaced with the following:

**K.**     **Damages** mean any monetary amount which an **Insured** is legally obligated to pay as a result of a **Claim**.

    **Damages** shall include:

    1.     a plaintiff's attorney's fees and court costs, but only in an amount equal to the percentage that the amount of monetary damages covered under this Policy for any settlement or judgment bears to the total amount of such settlement or judgment;

    2.     pre- and post-judgment interest awarded or imposed in any judgment, and premiums on appeal bonds required to be furnished with respect to any such judgment; and

    3.     punitive or exemplary damages where insurable by law; provided that the jurisdiction most favorable to the insurability of punitive damages shall control the insurability of such punitive damages, so long as such jurisdiction;

        (i)     is where such punitive damage were awarded or imposed;

        (ii)     is where the **Bodily Injury**, **Property Damage**, or **Wrongful Act** took place;

        (iii)     is where the **Named Insured** is incorporated or otherwise organized, or has a place of business; or

        (iv)     is where the Company is incorporated or has its principal place of business.

    **Damages** do not include:

    1.     civil or criminal fines, sanctions, penalties or forfeitures;

    2.     the multiplied portion of multiplied damage awards;

    3.     non-monetary, injunctive, declaratory or equitable relief or amounts owing in order to effectuate such relief;

4.   the re urn, refund or restitution of fees or other charges for **Your Product**, **Your Work** or your services;

5.   amoun s in urred to modify, redesign or correct **Your Product**, **our** **rk** or your services, other than expenses covered under Insuring Agreement D; or

6.   amoun s th are not insurable under any applicable law.

All other terms and conditions of this Policy remain unchanged.

_____
**Authorized Representative**

August 11, 2017
**Date**



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 8

**Policy Number:** 002539202                                          **Effective Date of Endorsement:** July 01, 2017
**Insured Name:**  Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BUSINESS CONTINUITY ENDORSEMENT

Notwithstanding anything contained in the Policy to the contrary, if communications internally within the **Named Insured's** organization, or between the **Named Insured** and the **Company,** or internally within the broker's organization, or between the broker and the **Named Insured** and/or the **Company**  are materially impeded or prevented by **Natural Disaster or Catastrophe** within thirty (30) calendar days of the **Annual Period** expiration date  the Company agrees to extend this policy for a period of thirty (30) calendar days from such **Annual Period**  expiration date.  Should the Company extend this policy in accordance with the preceding, in consideration for such extension, a pro-rata additional premium shall be paid to the Company.

The **Named Insured** and the **Company** may, by mutual agreement, retroactively void from its inception an extension of this policy pursuant to this endorsement.

For purposes of this Endorsement, **Natural Disaster or Catastrophe** is defined as any natural or man-made circumstance including terrorism that results in major adverse events causing bodily injury and/or property damage.  **Natural Disaster** or **Catastrophe** can be but is not limited to floods, volcanic eruptions, earthquakes, tsunamis, fires, mud slides, and other geologic processes.

All other terms and conditions of this Policy remain unchanged.

_____                              August 11, 2017
  Authorized Representative                                                    Date



## IRONSHO E  PECIA TY I  URANC  CO  PANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 9

**Policy Number:** 002539202
**Insured Name:** Rodan & Fields, LLC

**E fect ve Date of Endorsement:** July 01, 2017

THI  END R  MENT CHANGES THE POLICY. PLEASE R  AD IT   AREFULLY.

# AMEND NOTICE OF CIRCUM  TAN  ES   ND CLAIMS

In   nside ation of the premium charged, it is understood and agreed to that **SECTIO   V. CONDITIONS,** subsection A.2.a **Notice of Claim (Including a Suit)** is   mended as follows:

2. **Not ce of Claim (Including a Suit)**

   a. As a co  dition  r c  ent to any right to coverage   nder  h s Polic   you   ust give us written notice of any **Claim** (inc uding any **Suit)** first made against any **Insured** during the   **olicy Period** or any applicable Extended Repor ing  eriod as soon as practicable thereafter, but in   ev   nt later than:

      (i) with respect to a **Claim** first made duri g  h   licy Perio   ninety (90) days after the Policy expiration date; or

      (ii) with respect to a **Claim** firs  made duri g   en ed Reporti  ʒ Period, ninety (90) days after such **Claim** is first made.

All other terms and conditions of this Policy remain unchanged.

_____  _____  _____   _____  _____
Au  h   rized Representative

August 11, 2017
Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 10

**Policy Number:** 002539202                         **Effective Date of Endorsement:** July 01, 2017
**Insured Name:** Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NOTICE OF CIRCUMSTANCES OR CLAIM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:

I.      **SECTION V.**, **CONDITIONS**, A. Your Duties in the Event of an **Occurrence, Wrongful Act, Circumstance, Claim or Suit**, Item 1 a. **Notice of Circumstances**, is deleted in its entirety and replaced with the following:

1.      **Notice of Circumstances**.

         a.      If, prior to the end of the **Policy Period**, a member of your legal or risk management departments, or any other person charged with the responsibility for your insurance administration, becomes aware of and provides us with written notice (in accordance with subparagraph b. below) of an **Occurrence, Wrongful Act** or **Circumstance** which may reasonably result in a **Claim** or **Suit** to which this insurance applies, then any **Claim or Suit** which subsequently arises out of such **Occurrence, Wrongful Act** or **Circumstance** will be deemed made during the **Policy Period**, provided that the **Claim** is made or the **Suit** is brought before:

                 (i)      the end of this **Policy Period**, or

                 (ii)      the period of a subsequent, continuous renewal or replacement of this insurance issued by us or by an affiliate of ours.

         b.    You must provide us with full particulars of the potential **Claim**, including, but not limited to:

                 (i)      the time, place and nature of the **Occurrence**, **Wrongful Act** or **Circumstance;**

                 (ii)      the identity of all potential claimants and **Insureds** involved;

        (iii)     a description of the injury or **Damages** that may result from the **Occurrence**, **Wrongful Act** or **Circumstance;**

        (iv)     the manner in which you first became aware of the **Occurrence**, **Wrongful Act**, **Circumstance;** and

        (v)     the reasons you believe it may result in a **Claim.**

II.      **SECTION V**., **CONDITIONS**, A. Your Duties in the Event of an **Occurrence, Wrongful Act, Circumstance, Claim or Suit**, Item 2 d. **Notice of Claim (Including a Suit)**, is deleted in its entirety and replaced with the following:

        d.     Failure of an agent or **Employee** of the **Insured**, other than a member of your legal or risk management departments, or any other person charged with the responsibility for your insurance administration, to notify us of an **Occurrence**, **Wrongful Act**, **Circumstance**, **Claim** or **Suit** that such person knows about will not affect the insurance afforded to you.

III.     **SECTION V**., **CONDITIONS**, B. **Claim Made Date; Wrongful Acts Deemed Related**, Item 1., is deleted in its entirety and replaced with the following:

A **Claim** will be deemed to have been made at the earlier of the following times:

1.      when a member of your legal or risk management departments, or any other person charged with the responsibility for your insurance administration first receives written notice of such **Claim**; or

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

August 11, 2017
Date



### IRONSHO E  PECIA TY I   URANC  CO  PANY

**Mailing Address:**
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement # 11**

**Policy Number:** 002539202
**Insured Name:** Rodan & Fields, LLC

**Eff    ive  ate o<sup>f</sup> Endorsement:** July 01, 2017

H S ENDO  SE   ENT CHANGES THE POLICY  PLEASE RE  D  T CAREFULLY.

# OFAC COMPLIANCE NOTICE

Payment of Loss  nder this Po i   shall only be made in full co   pli   ce wi h al  Uni e  States of America economic or trade sanction laws or regulations,  ncludi  g, but not l mited to, sanction   aws and regul   ons   ministered and enforced by the U S. Treasury   epartm  nt s Office o  Foreign Assets Control ("OFAC").

All other terms and conditions of this Policy remain unchanged.

_____
**Authorized Representative**

August 11, 2017
**Date**



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA  02110
Toll Free: (877) IRON411

**Endorsement #** 12

**Policy Number:** 002539202        **Effective Date of Endorsement:** July 01, 2017
**Insured Name:**  Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT TO EXCLUSIONS (PRIMARY)

In consideration of the premium charged, it is agreed **that Section IV. EXCLUSIONS, A. Exclusions Applicable to All Coverages**, is amended by deleting the exclusions as indicated below:

| NAME OF EXCLUSION | CHECK IF DELETED |
|---|---|
| (8).  Asbestos | ☐ |
| (11). Mold | ☐ |
| (22). Lead | ☐ |

In consideration of the premium charged, it is agreed that **Section IV.  EXCLUSIONS B**, **Exclusions Applicable to Products – Completed Operations Liability Insurance, EXCLUSION 7**, **Other Products** is amended by deleting the products(s) indicated below:

| NAME OF PRODUCT | CHECK IF DELETED |
|---|---|
| a.  Birth Control Contraceptives | ☐ |
| b.  Fenfluramine, Phentermine or Dexfenfluramine | ☐ |
| c.  Thalidomide | ☐ |
| d.  Latex | ☐ |
| e.  Phenylpropanolamine (PPA) | ☐ |
| f.  Accutane and/or Isotretinoin | ☐ |
| g.  Silicone and/or Silica | ☒ |
| h.  Diethylstilbestrol, or DES or which has the same chemical formulary, or which is a stilbene derivative | ☐ |
| i.  Ephedra, Ma Huang, Ephedra sinica, Chinese Ephedra, Ephedrine, Pseudoephedrine, norpseudoephedune. | ☐ |

LFS.END.049 (12.11 ed.)        Page 1 of 1

| | |
|---|---|
| j.   Nefazodone | ☐ |
| k.   Thimersol | ☐ |
| l.   Vaccines | ☐ |
| m.  Hormone Replacement Therapy Products (HRT's) | ☐ |
| n.   Selective Seratonating Reuptake Inhibitors (SSRI) | ☐ |
| o.   DEHP (Di (2-ethyl/hexyl) phthalate | ☐ |
| p.   Metoclopramide / Reglan | ☐ |
| q.   Propoxyphene / Darvon / Darvocet | ☐ |
| r.   Fentanyl / Fentanyl Patches | ☐ |
| s.   Yaz / Yasmin | ☐ |
| t.   Pioglitazone HCl (Actos) | ☐ |
| u.   Bisphosphonates (Fosamax) | ☐ |

All other terms and conditions of this Policy remain unchanged.

_____          August 11, 2017
Authorized Representative                                             Date



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:

75 Federal Street

5th Floor

Boston, MA  02110

Toll Free: (877) IRON411

**Endorsement #** 13

**Policy Number:** 002539202            **Effective Date of Endorsement:** July 01, 2017

**Insured Name:**  Rodan & Fields, LLC

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PREMIUM AUDIT ENDORSEMENT UPON NON-RENEWAL OF PRIMARY RELATIONSHIP

Pursuant to Policy Declarations Item 8. and Section V. Condition E. of the Policy, this Policy is subject to audit adjustment upon expiration of the policy period.

If the termination of the coverage relationship with Ironshore is initiated by the Insured, or by Ironshore for non-payment of premium, the Policy has an audit rate of the following:

- REDACTED

-

If the termination of the coverage relationship with Ironshore is initiated by Ironshore, except for non-payment of premium, the Policy has an audit rate of the following:

- REDACTED

-

All other terms and conditions of this Policy remain unchanged.

_____         August 11, 2017

Authorized Representative                 Date