# EXHIBIT D

Annick M. Persinger (State Bar No. 272996)
TYCKO & ZAVAREEI LLP
483 Ninth St., Suite 200
Oakland, CA 94607
(510) 254-6808
(510) 210-0571 *facsimile*
*apersinger@tzlegal.com*

Hassan A. Zavareei (State Bar No. 181547)
Andrea R. Gold (*pro hac vice* forthcoming)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 *facsimile*
*hzavareei@tzlegal.com*
*agold@tzlegal.com*

Attorneys for Plaintiffs

ELECTRONICALLY
**F I L E D**
*Superior  Court of California,*
*County of San Francisco*
**05/25/2018**
Clerk of the Court
BY:KALENE APOLONIO
Deputy Clerk

## THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISO

|  |  |
|---|---|
| CARYN GORZO, KASEY POE, AND ANNA DOHNKE, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RODAN & FIELDS, LLC,<br><br>Defendant. | Case No. CGC-18-565628<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs CARYN GORZO, KASEY POE, and ANNA DOHNKE ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Rodan & Fields, LLC ("Rodan & Fields" or "Defendant").  Plaintiffs' allegations against Defendant are based upon investigation carried out by Plaintiffs' counsel, except for allegations pertaining to each Plaintiff, which are based upon each Plaintiff's personal knowledge.

## I.      NATURE OF ACTION

1.      This is a class action brought by Plaintiffs, on behalf of themselves and all other similarly situated persons, against Rodan & Fields, LLC. Plaintiffs seek damages and equitable and legal remedies for themselves and the putative Class, which includes California consumers who purchased Rodan & Fields Enhancements Lash Boost (hereafter, "Lash Boost").

2.      This action arises out of Defendant's deceptive and misleading marketing of Lash Boost, including its statements that Lash Boost is "not a drug product," is "safe and non-irritating," "does not contain any over-the-counter (OTC) or drug ingredients," "contains only cosmetic ingredients," and is "not associated with any significant side effects," when in fact Lash Boost is a drug, is illegally marketed and sold, and contains ingredients that are associated with serious adverse effects.

3.      Rodan & Fields has promoted itself as a company that creates safe and effective skincare products, with a thoughtful process of thoroughly vetting ingredients. For instance, on its website, Rodan & Fields states: "Rodan & Fields' philosophy is to create safe and effective formulations, and thus, would not place a product on the market otherwise."[1] Through this campaign, Rodan & Fields has convinced consumers that they can trust the Rodan & Fields name and the specific representations Rodan & Fields makes about its products.

---

[1] http://www.rodanandfields.com/rfconnection/?s=lash+boost.

4.     During all times material hereto, Defendant engaged in a common plan and scheme, through the use of misleading marketing, advertising, and product labeling, which led consumers to believe that Lash Boost is a purely cosmetic product that is not associated with serious health risks, and is legally marketed and sold, when in fact, none of these things are true.

5.     The U.S. Food and Drug Administration has found that one of Lash Boost's ingredients, isopropyl cloprostenate, is "well known to have an effect on the structure or function of the body," and that, accordingly, products containing isopropyl cloprostenate "are drugs as defined by section 201(g)(1)(C) of the [the Federal Food, Drug, and Cosmetic] Act (21 U.S.C. § 321(g)(l)(C))."[2]

6.     Because it contains isopropyl cloprostenate, Lash Boost qualifies as a drug as well as a cosmetic under both federal laws and parallel state laws governing food, drugs, and cosmetics.[3]

7.     Lash Boost is also a "new drug" that is illegally sold without an approved new drug application in violation of Cal. Health & Safety Code § 111550 and 21 U.S.C. § 355(a)), and a "misbranded" drug that is illegally sold in violation of Cal. Health & Safety Code §§ 111440, 111445 and 21 U.S.C. § 331.

8.     In addition to being a drug that is marketed and sold illegally, Lash Boost contains ingredients that are associated with serious adverse effects.  Specifically, the FDA has found that isopropyl cloprostenate may cause side effects including, but not limited to "ocular irritation,

_____

[2] https://wayback.archive-it.org/7993/20170111100914/http:/www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm.  In line with the FDA's guidance, the District Court for the Central District of California recently found that an isopropyl cloprostenate-based product known as "RevitaLash Enhanced®" was "objectively intended to both cosmetics and drugs ... [f]or example, a shampoo is a cosmetic because its intended use is to cleanse the hair. An antidandruff treatment is a drug because its intended use is to treat dandruff. Consequently, an antidandruff shampoo is both a cosmetic and a drug ... [s]uch products must comply with the requirements for both cosmetics and drugs.")
[3] *See* https://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm ("some products meet the definitions of both cosmetics and drugs ... [f]or example, a shampoo is a cosmetic because its intended use is to cleanse the hair. An antidandruff treatment is a drug because its intended use is to treat dandruff. Consequently, an antidandruff shampoo is both a cosmetic and a drug ... [s]uch products must comply with the requirements for both cosmetics and drugs.")

hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy."[4]

9.  Defendant knows, or reasonably should know, that Lash Boost is a drug, that it is illegally sold without having gone through the proper regulatory approval processes, and that its ingredients are associated with serious adverse effects.

10.  Accordingly, Defendant's labeling, advertising, and marketing of Lash Boost as "not a drug product," "safe and non-irritating," "not contain[ing] any over-the-counter (OTC) or drug ingredients," "contain[ing] only cosmetic ingredients," and "not associated with any significant side effects," as well as its material omissions signifying that Lash Boost is legally saleable, are deceptive and misleading.

11.  But for Defendant's deceptive and misleading representations and omissions, Plaintiffs and the Class would not have purchased Lash Boost.

12.  As discussed more fully herein, Defendant's conduct violates California's Sherman Food, Drug, and Cosmetics Law (California's Health & Safety Code §§ 109875 *et. seq.*) ("Health and Safety Code") and the following consumer protection statutes: (i) California's Business & Professions Code §§ 17200, *et seq.* (the Unfair Competition Laws or "UCL"); (ii) California Civil Code §§ 1750, *et seq.* (the Consumers Legal Remedies Act or "CLRA"); and (iii) California's Business & Professions Code §§ 17500, *et seq.* (the False Advertising Laws or "FAL").

13.  Plaintiffs bring this action to vindicate state law rights on behalf of themselves and other class members. Specifically, Plaintiffs seek to remedy the unlawful, unfair, deceptive, and misleading business practices of Defendant with respect to the marketing and sale of Lash Boost, which is available for purchase throughout California and the United States, and to recover the ill-gotten gains obtained by Defendant through this deception.

## II.  PARTIES

---

[4] https://wayback.archive-it.org/7993/20170111100914/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm

14.     Plaintiff Caryn Gorzo is and was at all relevant times a citizen of the State of California, residing in the City of Murrieta, California. Plaintiff has purchased and used Lash Boost for personal, family, or household purposes.  She first purchased the product from Rodan & Fields on or about June 1, 2017.

15.     Plaintiff Kasey Poe is and was at all relevant times a citizen of the State of California, residing in the City of Grover Beach, California. Plaintiff has purchased and used Lash Boost for personal, family, or household purposes.  She purchased the product from Rodan & Fields on or about January 10, 2018.

16.     Plaintiff Anna Dohnke is and was at all relevant times a citizen of the State of California, residing in the City of Tehachapi, California. Plaintiff has purchased and used Lash Boost for personal, family, or household purposes.  She purchased the product from Rodan & Fields on or about January 20, 2017, and in May 2017 and January 2018.

17.     Plaintiffs examined Lash Boost's packaging, labeling, and/or other marketing materials. If Defendant had properly disclosed the true facts regarding Lash Boost and its ingredients, Plaintiffs either would not have purchased Lash Boost and/or would have paid less for it.

18.     Defendant Rodan & Fields, LLC is a skincare company headquartered in San Francisco, California and incorporated in California.  Rodan & Fields markets and sells Lash Boost directly through its website, as well as through its many distributors or "consultants."

III.     **JURISDICTION AND VENUE**

19.     This Court has jurisdiction over this matter because the amount in controversy exceeds $25,000.

20.     Venue is proper in this District pursuant to California Code of Civil Procedure § 395(a) because Rodan & Fields, LLC is a resident of San Francisco, California, which is located in this District.

21.     Rodan & Fields, LLC regularly and systematically does business throughout the State of California, including in this District, and provides products and services to its customers,

**FIRST AMENDED CLASS ACTION COMPLAINT**

including members of the putative Class. As such, it is subject to the personal jurisdiction of this Court.

## IV.    FACTS COMMON TO ALL CLASS MEMBERS

### Rodan & Fields' Representations That Lash Boost is Not a Drug

22.    Rodan & Fields, an American manufacturer and multi-level marketing company specializing in skincare products, markets and sells a topical serum known as Lash Boost.

23.    Lash Boost retails for approximately $150.00 and is available without a prescription through Rodan & Fields' website and through Rodan & Fields' many distributors, whom the company refers to as "consultants."

24.    Rodan & Fields' website describes Lash Boost as a "unique proprietary formula that improves the appearance of lash volume and length for lashes that are 100% real, 100% yours."[5]

25.    Lash Boost, which is labeled and marketed as an "eyelash conditioning serum," contains an ingredient known as isopropyl cloprostenate.

26.    Isopropyl cloprostenate is one of a class of chemicals known as prostaglandin analogs (hereafter, "PAs"), which have long been used to reduce intraocular pressure in glaucoma patients.[6] According to the Glaucoma Research Foundation, "prostaglandin analogs work by increasing the outflow of intraocular fluid from the eye."[7] A well-known side effect of glaucoma treatments containing PAs is that they cause eyelash growth.[8]

27.    In 2008, the U.S. Food and Drug Administration ("FDA") approved Latisse,® whose active ingredient is a PA known as bimatoprost, for increasing eyelash length, thickness, and darkness in patients with hypotrichosis (or inadequacy) of the eyelashes.[9] Latisse is classified as an ophthalmic drug and cannot be obtained without a prescription.[10]

---

[5] https://www.rodanandfields.com/Shop/Product/ENHLSH01#description.
[6] https://wayback.archive-it.org/7993/20170111100914/http:/www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm.
[7] https://www.glaucoma.org/treatment/medication-guide.php#prostaglandin_analogs.
[8] *See Id.*
[9] *See* https://www.accessdata.fda.gov/drugsatfda_docs/nda/2008/022369s000_Approv.pdf.
[10] *See* https://www.accessdata.fda.gov/drugsatfda_docs/label/2012/022369s005lbl.pdf.

28.     The FDA has found that, like the active ingredient in Latisse, the PA isopropyl cloprostenate is "well known to have an effect on the structure or function of the body," and that, accordingly, products containing isopropyl cloprostenate "are drugs as defined by section 201(g)(1)(C) of the [the Federal Food, Drug, and Cosmetic] Act (21 U.S.C. § 321(g)(l)(C))."[11]

29.     The California Health and Safety Code defines "drug" based on intended use. Specifically, any product "intended for use in the diagnosis of disease or other condition, or in the cure, mitigation, treatment, or prevention of disease in humans or any other animal" or any product "intended to affect the structure or any function of the body of human beings" qualifies as a "drug" under California law. Code § 109925(b) and (c). The Federal Food, Drug, and Cosmetic Act ("FDCA") adopts the same definition. 21 U.S.C. § 321(g)(1)(B) and (C).

30.     Because it is objectively intended to affect the structure or function of the body, as demonstrated by the fact that it contains isopropyl cloprostenate, Lash Boost qualifies as a drug under both federal laws and parallel state laws governing food, drugs, and cosmetics.[12]

31.     Lash Boost's pricing ($150 for a two-to-three month supply,[13] far more expensive than most non-drug lash enhancement products on the market) and recommended method of application (the website instructs consumers that "for best results," they should "use Lash Boost for 8 weeks,"[14] indicating that unlike most purely cosmetic products, Lash Boost does not immediately affect appearance but instead changes eyelashes over time) provide further evidence of Rodan & Fields' objective intent for Lash Boost to affect the structure or function of the body.

32.     Rodan & Fields' marketing claims regarding Lash Boost's effects on physical

---

[11] https://wayback.archive-it.org/7993/20170111100914/http:/www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm

[12] In determining whether a product is intended to affect the structure or function of the body, a vendor's objective intent in promoting, distributing, and selling the product is the key consideration. *See, e.g., United States v. Kasz*, 855 F.Supp 534, 542 (D.R.I. 1994) ("[T]he objective intent of the vendor, not the vendor's subjective explanations and disclaimers" determines the intended use of a product).

[13] http://www.rodanandfields.com/rfconnection/index.php/2017/06/26/how-long-will-a-container-of-enhancements-lash-boost-last/.

[14] https://www.rodanandfields.com/Shop/Product/ENHLSH01#description

**FIRST AMENDED CLASS ACTION COMPLAINT**

appearance ("get the appearance of lush, longer-looking lashes"[15]) also show that it is intended to function as a drug. Notably, in marketing Lash Boost, Rodan & Fields deliberately uses language centered around appearance in order to avoid to regulatory oversight:

> Because Lash Boost is a cosmetic and not a drug, the company is careful to avoid saying that it causes lashes to grow. Instead, it uses language centered around appearance, promising "fuller-looking" and "longer-looking" lashes. Consultants for Rodan & Fields are given dos and don'ts for their social media posts that advise them on lighting, as well as examples of compliant language ("I have noticed longer-looking lashes") and noncompliant phrasing ("My lashes are longer").[16]

However, the FDA has made clear that representations regarding appearance, when paired with ingredients known to cause lash growth, indicate that a lash enhancement product is a drug.[17]

33.     In marketing and selling Lash Boost, Rodan & Fields actively misleads consumers by fundamentally misrepresenting what Lash Boost is – a drug.  For instance, the Rodan & Fields website states:

> ENHANCEMENTS Lash Boost is a cosmetic-grade product designed to improve the appearance of your lashes. It is not a drug product and will not affect the structure and function of your lashes.[18]

> ENHANCEMENTS Lash Boost is a cosmetic product and not considered a drug. It contains only cosmetic ingredients to address the appearance of lashes and is not intended to be a medical treatment for damaged lashes.[19]

> ENHANCEMENTS Lash Boost is a cosmetic product and does not contain any over-the-counter (OTC) or drug ingredients. It contains a complete formula of safe ingredients which moisturize, nourish and protect the appearance of lashes.[20]

---

[15] https://www.rodanandfields.com/Shop/Product/ENHLSH01#description
[16] https://www.nytimes.com/2017/08/25/business/media/lash-boost-eyelash-enhancer-marketing.html.
[17] *See* https://wayback.archive-it.org/7993/20170111100914/http:/www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm (stating that certain lash products were drugs because "The presence of the prostaglandin analog, isopropyl cloprostenate, along with appearance claims such as 'enhance the appearance of your lashes and brows,' 'fuller healthier-looking lashes,' and 'fuller healthier-looking brows' indicate that your products are intended to affect the structure or function of the body.")
[18] http://www.rodanandfields.com/rfconnection/?s=lash+boost.
[19] *Id.*
[20] *Id.*

34.     Additionally, in a description of Lash Boost's ingredients and how they "fit into the R+F Philosophy," Defendants fails to address the fact that the product is effective because it contains a PA that stimulates lash growth, instead focusing on the "natural" ingredients the product also contains and their supposed effects:

ENHANCEMENTS Lash Boost follows the Rodan + Fields philosophy of Multi-Med Therapy for lashes by bringing together Biotin, Keratin and peptides to moisturize, nourish and protect your lashes. Biotin and Keratin deposit an infusion of protein to the lashes, helping to moisturize and condition them, while peptides enhance lash durability, supporting more voluminous looking lashes. [21]

ENHANCEMENTS Lash Boost is a cosmetic product and does not contain any medical or active ingredients.  It contains a complete formula of safe ingredients which moisturize, nourish, and protect the appearance of lashes.[22]

35.     Lash Boost's label does not list any "active ingredients" or "inactive ingredients," designations consumers have come to expect on drug products,[23] nor does it contain any other indications that Lash Boost is a drug.

36.     Based on the labeling and marketing of Lash Boost, Plaintiffs reasonably believed that they were purchasing a purely cosmetic product, not a drug, when in reality, the FDA has found that the presence of isopropyl cloprostenate in Lash Boost makes it a drug, and a variety of other factors indicate that Rodan & Fields objectively intends for Lash Boost to function as a drug.

37.     At all relevant times, Rodan & Fields was intimately aware of the true nature of the isopropyl cloprostenate in its product, including that it was designed to affect the structure and/or function of the eyelashes, and thus knew or reasonably should have known that Lash Boost was a drug product within the governing federal and state law definitions.

---

[21] *Id.*

[22] *Id.*

[23] See https://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm ("Combination OTC drug/cosmetic products must have combination OTC drug/cosmetic labeling. For example, the drug ingredients must be listed alphabetically as 'Active Ingredients,' followed by cosmetic ingredients, listed in descending order of predominance as 'Inactive Ingredients.'")

38.     Despite this knowledge, Defendant continued to represent to consumers that Lash Boost "is not a drug product and will not affect the structure and function of your lashes," "is not considered a drug," "contains only cosmetic ingredients," and "is a cosmetic product and does not contain any over-the-counter (OTC) or drug ingredients."

39.     In this way, Defendant actively misled consumers about the true nature of Lash Boost and its ingredients.  Reasonable consumers would consider the true facts regarding Lash Boost and its ingredients to be important in determining whether or not to purchase Lash Boost.

40.     Plaintiffs reasonably understood the marketing of Lash Boost to mean or imply that the Lash Boost is not a drug.  Based on the labeling and marketing of Lash Boost, Plaintiffs reasonably believed that they were purchasing a purely cosmetic product.

41.     Defendant knew, or reasonably should have known, that its representations are deceptive, misleading, and unlawful, and intended that consumers rely on them.  Alternatively, Defendant was reckless in not knowing that its representations were deceptive and/or misleading at the time that they were made.

42.     As the direct and proximate result of Defendant's false, deceptive and/or misleading statements, Plaintiffs and putative Class Members have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase Lash Boost.

**Rodan & Fields' Material Omissions Indicating That Lash Boost is Legally Marketed and Sold**

43.     Not only is Lash Boost a drug, it is a "new drug" as defined by 21 C.F.R. § 310.527(b), incorporated into California law by Cal. Health & Safety Code § 110110, because it is "labeled, represented, or promoted for external use as a hair grower."

44.     Lash Boost also qualifies as a "new drug" under Cal. Health & Safety Code § 109980 and 21 U.S.C. § 321(p) because it is "not generally recognized, among experts qualified by scientific training and experience … as safe and effective for use under the conditions prescribed, recommended, or suggested" and "has not … been used to a material extent or for a

material time under [those] conditions."[24]

45.     Both California and federal law prohibit the sale of "new drugs" without an approved new drug application. Code § 111550; 21 U.S.C. § 355(a).

46.     Plaintiffs are informed and believe that Lash Boost is marketed and sold without an approved new drug application, and that neither the FDA nor the California Department of Public Health has approved it for sale.

47.     Lash Boost is also a "misbranded" drug under various provisions of the Cal. Health & Safety Code, including:

> (i) under § 111330 because the product labeling is misleading insofar as it fails to disclose all significant safety concerns and/or fails to disclose that it is a drug, and is a new drug sold without an approved new drug application;

> (ii) under § 111335, because the product labeling and packaging do not conform to the requirements of Chapter 4 (commencing with § 110290);

> (iii) under § 111355 because the product labeling does not bear the established name and quantity of each active ingredient;

> (iv) under § 111360, because Rodan & Fields fails to include in all advertising materials a summary of all side effects and contraindications;

> (v) under § 111375, because the product labeling does not bear adequate warnings as to unsafe dosages or methods or duration of administration or application; and/or

> (vi) under § 111400, because it may be dangerous to health when used in the suggested frequency, duration, or dosage.

---

[24] *See also* https://wayback.archive-it.org/7993/20170111100914/http:/www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm (showing that the FDA found that several eyelash enhancement products containing isopropyl cloprostenate were "new drugs, as defined by section 201(p) of the Act, (21 U.S.C. § 321(p)), because they are not generally recognized as safe and effective under the conditions prescribed, recommended, or suggested in its labeling.")

48.     Under the Health & Safety Code, it is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug that is misbranded, or to misbrand any drug. Cal. Health & Safety Code §§ 111440, 111445.

49.     Because Lash Boost is "new drug" sold without an approved new drug application, and because it is a misbranded drug, Lash Boost is sold illegally.

50.     In marketing Lash Boost, Rodan & Fields materially omits and does not adequately disclose to consumers that Lash Boost sold illegally without proper government approval.

51.     By omitting this information, Defendant actively conceals material facts and leads reasonable consumers to believe that they are purchasing a product whose sale does not violate federal and/or state law.  Specifically, by marketing and selling Lash Boost, Defendant effectively represents to consumers that the product is recognized as safe by the relevant regulatory bodies, and that it is legally saleable, when in reality, it is not.

52.     Reasonable consumers would consider the omitted facts to be important in determining whether or not to purchase Lash Boost.

53.     Plaintiffs reasonably understood the marketing of Lash Boost to mean or imply that the sale of Lash Boost is legal.  Based on the labeling and marketing of Lash Boost, Plaintiffs reasonably believed that they were purchasing a product that was legally saleable.

54.     Defendant knew, or reasonably should have known, that the sale of Lash Boost was illegal under federal and California law.  Such facts were not known or reasonably accessible to Plaintiffs. Plaintiffs are informed and believe that Defendant had superior and exclusive knowledge of these material facts.

55.     At all relevant times, Defendant was familiar with the requisite federal and state regulatory scheme surrounding the marketing and sale of drugs and cosmetics, and at one point even produced and publicly posted a promotional video concerning its supposed compliance with FDA regulations.[25]

---

[25] *See* https://www.youtube.com/watch?v=CeM1lAfmwBE.

**FIRST AMENDED CLASS ACTION COMPLAINT**

56.     Defendant omitted the above-described material information with the knowledge that its omissions would mislead and deceive consumers. Alternatively, Defendant was reckless in not knowing that the omissions were deceptive and/or misleading.

57.     As the direct and proximate result of Defendant's deceptive and/or misleading material omissions, Plaintiffs and putative Class Members have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase Lash Boost.

**Rodan & Fields' Representations and Material Omissions Indicating That Lash Boost is Safe and Not Associated With Any Serious Adverse Effects**

58.     The FDA has found that isopropyl cloprostenate poses significant health risks, including but not limited to "ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy."[26]

59.     The FDA has advised that, because of its potentially harmful effects, products containing isopropyl cloprostenate are "not safe for use except under the supervision of a practitioner licensed by law to administer them."[27]

60.     Despite what the FDA has said, Rodan & Fields affirmatively states in its marketing materials that Lash Boost is safe to use as directed and has not been associated with any serious side effects, including change in iris pigmentation, a risk specifically identified by the FDA as stemming from the use of isopropyl cloprostenate. For instance, the Rodan & Fields website states:

> Rodan + Fields' philosophy is to create safe and effective formulations, and thus, would not place a product on the market otherwise. ENHANCEMENTS Lash Boost is clinically and ophthalmologist tested, and found to be safe and non-irritating. [28]

> ENHANCEMENTS Lash Boost … contains a complete formula of safe ingredients which moisturize, nourish and protect the appearance of lashes.[29]

---

[26] https://wayback.archive-it.org/7993/20170111100914/http:/www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm.
[27] Id.
[28] http://www.rodanandfields.com/rfconnection/?s=lash+boost
[29] Id.

**FIRST AMENDED CLASS ACTION COMPLAINT**

The only serious side effects we have heard about are those associated with drug products, not cosmetics. ENHANCEMENTS Lash Boost is a cosmetic, and the ingredients have not been associated with any significant side effects. [30]

ENHANCEMENTS Lash Boost is not anticipated to cause permanent discoloration on the eye area. [31]

ENHANCEMENTS Lash Boost does not cause discoloration or change in pigmentation of the iris. Those serious side effects are associated with the warnings on drug products only. The cosmetic ingredients used in ENHANCEMENTS Lash Boost have never been associated with reports of change in iris pigmentation or any discoloration. [32]

61.    In marketing and selling Lash Boost, Rodan & Fields also materially omits and does not adequately disclose to consumers the other side effects isopropyl cloprostenate is known to cause, including hyperemia, macular edema, ocular inflammation, and the lowering of intraocular pressure.

62.    Though the Rodan & Fields website does refer to minor potential reactions such as irritation, redness, and swelling, Rodan & Fields' instructions for how to deal with such reactions are contradictory and highly likely to confuse reasonable consumers.

63.    For instance, the Lash Boost product page states "[i]f you develop irritation or swelling, *discontinue* product usage",[33] whereas elsewhere on the website, Rodan & Fields tells consumers that they may experience "temporary tingling or redness, which normally disappears after *continued* use."[34] In yet another place on the website, Rodan & Fields tells consumers that if they experience tingling, burning, redness, or irritation, they should "reduce the frequency of application to every other day until the sensation no longer occurs. Gradually go back to daily application."[35]

---

[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] https://www.rodanandfields.com/Shop/Product/ENHLSH01#usageNotes (emphasis supplied)
[34] http://www.rodanandfields.com/rfconnection/?s=lash+boost (emphasis supplied)
[35] *Id.*

**FIRST AMENDED CLASS ACTION COMPLAINT**

64.     In some instances, the website goes so far as to note that the product may be harmful when used in very specific ways, but conspicuously fails to explain why, or provides highly misleading explanations.  For example, the website states:

> Applying ENHANCEMENTS Lash Boost to the upper lashes alone will subsequently apply to the lower lashes by the way of natural blinking. Thus, we do not recommend applying ENHANCEMENTS Lash Boost on the lower lashes because it could lead to excessive product usage and irritate the eye area.[36]

This description grossly understates the risks associated with PAs in that it fails to mention that, when PAs are applied to the lower lash line, they can cause excess hair growth outside the treatment area, for instance on the cheek.[37]

65.     In another place, the website states:

> If you're . . . being treated for any eye-related disorder, undergoing cancer treatment, prone to dry eyes or styes, consult your physician before use.[38]

Again, this warning is not specific with respect to the documented risk that Lash Boost may interfere with glaucoma treatment or lower intraocular pressure.

66.     These statements and omissions are likely to mislead and deceive ordinary consumers of Lash Boost and have deceived Plaintiffs.  Plaintiffs reasonably understood the labeling and marketing of the Products to mean or imply that Lash Boost is safe to use and not associated with serious adverse effects.

67.     Yet, in reality, Lash Boost can and does cause damage to the eyes when used in accordance with the instructions provided to consumers.

68.     For instance, the Journal of Cosmetic Dermatology has published a case study noting that isopropyl cloprostenate has been associated with periocular discoloration.[39]

---

[36] http://www.rodanandfields.com/rfconnection/index.php/2017/06/26/can-enhancements-lash-boost-be-used-on-the-lower-lash-line/

[37] http://www.latisse.com/FAQs.aspx; https://www.nytimes.com/2010/05/02/health/02latisse.html ("Latisse must be dabbed on the upper lash line only, since it can grow unintended hair — on the cheek, for example.")

[38] http://www.rodanandfields.com/rfconnection/?s=lash+boost

[39] *See* Orsolya N. Horváth et. al., *Periocular discoloration after using a prostaglandin analog for eyelash enhancement: Evaluation with reflectance confocal microscopy*, JOURNAL OF

**FIRST AMENDED CLASS ACTION COMPLAINT**

69.     Furthermore, numerous consumers have complained online that Lash Boost has caused side effects including, among other things, burning, itching, redness, discoloration, swelling, styes, severe dry eye, eyelash fallout, hair growth outside the application area, drooping eyelids, and infections.[40]  For example:

- Started using this product in the late spring of 2017, by June my eyes were infected and i was in severe pain, doctor visits and more doctor visits, prescriptions...loss of lashes, I am STILL dealing with this![41]

- Growing hair on cheekbones. I am horrified and totally think that R&F should be responsible for not listing this as a side effect![42]

- …this morning as I was doing my makeup as usual I leaned in close to realize that I'm growing hair on my cheek bones!!! … I'm absolutely horrified![43]

- I did have dry, irritated eyes, headache and blurry vision.[44]

- I have only been using it for a week and now have Droopy eyes. [45]

- … made my skin dark and gave me a sunken in eye look.[46]

- I have dark lids, very dry eyes that are red all the time, some cysts and permanent eyes discomfort.[47]

---

COSMETIC DERMATOLOGY (Sept. 2016) ("[a] woman was admitted to our outpatient department with periocular discoloration. She applied a serum with the active ingredient isopropyl cloprostenate for enhancing the growth of the eyelashes").

[40] Notably, Latisse users are instructed to apply the drug with included one-use applicators in order to avoid infection. *See* https://www.nytimes.com/2010/05/02/health/02latisse.html. Lash Boost comes with a single applicator wand that is meant to be used over and over again.

[41] https://rodan-and-fields.pissedconsumer.com/wish-i-d-never-heard-of-lash-boost-201710231119104.html

[42] https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-serum-review-201705301054140.html

[43] https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-serum-review-201703051016981.html

[44] https://rodan-and-fields.pissedconsumer.com/lash-boost-side-effects-201801071163954.html

[45] https://rodan-and-fields.pissedconsumer.com/lash-boost-droopy-eyelids-201803131209930.html

[46] https://rodan-and-fields.pissedconsumer.com/lash-boost-sunken-eyes-dark-circles-201711181133377.html

[47] https://rodan-and-fields.pissedconsumer.com/not-worth-the-pain-or-risk-201803021201352.html

- … even after stopping use of the Rodan and Fields lash booster my eyelids have a very prominent red line and darking of the eyelids.[48]

- … a few days later I noticed a STYE on my lower eyelid … Reps will tell us its because we didn't apply correctly or bacteria formed, but for me this was certainly not the case after all the precautions I took.[49]

- … I developed two cysts, one in each eye, within two weeks of using the serum. I also noticed redness, eye sensitivity, and pain.[50]

- I had a bald spot in the middle of my lashes... then I woke up with my right eyelid all swollen and was told I had a stye!!! I've never had a stye in my life. It wouldn't go away and turned into a chalazion and I had to have a specialist give me a shot in my eyelid![51]

- my eyelashes were falling out in clumps … I emailed RF customer service, and I was told that my experience "was completely normal" and that I should continue to use the product![52]

- …my eyes were red, itchy and watery … three weeks, 4 opthamogist visits, a trip to urgent care and over $200 in different medications later, my eyes are finally settling down.[53]

- Used this product for one month. Had slight eye itchiness but tried to "deal with it" to see the results. Well a month in and my left eye will NOT stop tearing. Terrible! There is something dangerous in this product![54]

70.   One consumer even posted a video on YouTube demonstrating that Lash Boost has caused persistent drooping of her eyelid.[55]  The video, which has attracted over 130,000 views, includes a link to an article in the Review of Opthamology which notes that eyelid drooping is a known side effect of PA use, and explains: "exposure to the prostaglandin affects [peri-orbital fat

---

[48] https://rodan-and-fields.pissedconsumer.com/results-but-red-line-as-eyeliner-followed-201802051183322.html

[49] https://rodan-and-fields.pissedconsumer.com/styes-and-lash-boost-info-on-why-this-is-occuring-201707281080630.html

[50] https://rodan-and-fields.pissedconsumer.com/eye-cysts-in-both-eyes-201803221216610.html

[51] https://rodan-and-fields.pissedconsumer.com/very-dangerous-product-horrible-side-effects-201706161062107.html

[52] https://rodan-and-fields.pissedconsumer.com/i-despise-this-company-and-their-customer-service-201707261079511.html

[53] https://rodan-and-fields.pissedconsumer.com/lash-boost-is-a-bust-201803221216835.html

[54] https://rodan-and-fields.pissedconsumer.com/rodan-and-fields-lash-boost-201801241175433.html

[55] https://www.youtube.com/watch?v=7HlbQeZ54Kk

**FIRST AMENDED CLASS ACTION COMPLAINT**

cells'] metabolism, causing them to shrink. The shrinkage of the fat cells surrounding the eye causes enophthalmos—the eye becomes more sunken-in. The result is a deepening of the superior eye lid sulcus, while periorbital fat tissue seems to melt away."[56]

71.    Based on the marketing of Lash Boost, Plaintiffs reasonably believed that it was safe to use and not associated with serious adverse effects. Plaintiffs purchased the Products in reliance on Defendant's representations and material omissions to this effect.

72.    Unknown to Plaintiffs and putative Class Members at the time of purchase, and known to Defendant, Lash Boost contains ingredients that may cause damage to the eyes upon proper application.

73.    Defendant is aware that Lash Boost may cause such damage due to an undisclosed drug ingredient.  Despite notice and knowledge of the injuries caused by Lash Boost via the numerous consumer complaints Defendant has directly received and which are publicly available on the internet, Defendant has failed and/or refused to provide an adequate remedy for the systemic injuries caused by Lash Boost.

74.    Defendant has not recalled, relabeled or reformulated Lash Boost, nor has it warned consumers about the dangers associated with using Lash Boost.

75.    Plaintiffs and Class Members relied, to their detriment, on Defendant to distribute safe products. Instead, Defendant marketed and sold a product that is known to cause serious adverse effects.

76.    As a result of Defendant's material omissions, and the false, deceptive, and misleading statements in Lash Boost's marketing materials, including that "Lash Boost is … safe and non-irritating," "Lash Boost … contains a complete formula of safe ingredients which moisturize, nourish and protect the appearance of lashes," "[Lash Boost's] ingredients have not been associated with any significant side effects," "Lash Boost is not anticipated to cause

---

[56] Stanley J. Berke, *PAP: New Concerns for Prostaglandin Use*, REVIEW OF OPTHAMOLOGY (Oct. 2012), *available at* https://www.reviewofophthalmology.com/article/pap-new-concerns-for-prostaglandin-use

**FIRST AMENDED CLASS ACTION COMPLAINT**

permanent discoloration on the eye area," and "the cosmetic ingredients used in … Lash Boost have never been associated with reports of change in iris pigmentation or any discoloration," Plaintiffs and the putative Class Members purchased Lash Boost with no reason to know or suspect the dangers associated with using it. Not until eye injuries occurred would a putative Class Member have reason to know or suspect the dangers associated with Lash Boost.

77.     Defendant made the above-described statements and omissions with the knowledge that they were false, deceptive and/or misleading, and with the intent that consumers rely on them. Alternatively, Defendant was reckless in not knowing that the representations and omissions were false, deceptive and/or misleading at the time that they were made.

78.     Furthermore, as the direct and proximate result of Defendant's false, deceptive and/or misleading statements and omissions, Plaintiffs and putative Class Members have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase Lash Boost.

## V.      PLAINTIFFS' FACTUAL ALLEGATIONS

### Plaintiff Caryn Gorzo

79.     After viewing advertisements posted by a Rodan & Fields consultant on Facebook, Plaintiff Caryn Gorzo visited the Rodan & Fields website to read more about Lash Boost.

80.     Plaintiff Gorzo observed that the product was touted as being "safe" and "non-irritating." She also noted that the website did not warn of any serious side effects.

81.     At the time, she was aware of the existence of the prescription eyelash growth product, Latisse, and its attendant side effects, and believed that, unlike Latisse, Lash Boost was not a drug because it was not advertised as such and did not require a prescription.

82.     Having been assured by the website of the product's safety and status as purely a cosmetic product, Plaintiff Gorzo placed an order with the Rodan & Fields consultant on or about June 1, 2017.

83.     Plaintiff Gorzo also signed up for Rodan & Fields' auto-ship option and has since purchased and received two additional tubes of the product through Rodan & Fields' auto-ship program.

84.     Plaintiff Gorzo reasonably relied upon the deceptive and misleading claims on Rodan & Fields' website in purchasing Lash Boost.

85.     Plaintiff Gorzo used the product shortly after purchasing it and followed the product directions during application.  Part of the way through her second tube, she was forced to discontinue use of the product because of the side effects she was experiencing, including redness, itching, and pain.

86.     At the time, a third tube had already been auto-shipped to her.  Plaintiff Gorzo was unable to use the rest of her second tube, or any of her third tube of Lash Boost.

87.     Plaintiff Gorzo suffered injury as a result of her purchase of Lash Boost because she was deceived into purchasing the product based on Defendant's representations that it was "safe and non-irritating," and its material omissions indicating that Lash Boost was legally saleable and not a drug.

88.     At no time did Defendant provide Plaintiff Gorzo with any warnings concerning the true nature of Lash Boost or the potential dangers associated with its use.  Plaintiff Gorzo would not have purchased Lash Boost had she known that it was being sold illegally, contained drug ingredients, or contained ingredients known to cause serious adverse effects.

89.     Plaintiff Gorzo would purchase Lash Boost in the future if she could be assured that it no longer contained an undisclosed drug ingredient associated with serious undisclosed side effects.

**Plaintiff Kasey Poe**

90.     Plaintiff Kasey Poe first heard about Rodan & Fields Lash Boost through a social media "moms" group she was a member of.  Another member of the group posted an advertisement for a Rodan & Fields-themed event where people could learn more about the company's products.

91.     Plaintiff Poe attended this event in the Fall of 2017 and saw Lash Boost displayed there. She was impressed by the results Rodan & Fields advertised, but as a general matter, is cautious about the products she uses, especially when they are to be applied around her eye area. As a result, she delayed purchasing the product.

92.     Subsequently, she read through the Rodan & Fields product webpage for Lash Boost and noted that it was advertised as being a safe "lash conditioner."  She did not see anything indicating that Lash Boost was a drug, and believed it was a purely cosmetic product.

93.     Several months later, in January of 2018, she saw the product being advertised on a Rodan & Field consultant's Facebook page, and placed an order with the consultant on or about January 10, 2018.

94.     Plaintiff Poe reasonably relied upon the deceptive and misleading claims on Rodan & Fields' website in purchasing Lash Boost.

95.     Plaintiff Poe used the product shortly after purchasing it and followed the product directions during application.  After her third or fourth nightly application of the product, she awoke to eyes that were itchy, red, and painful.

96.     After learning that the product might contain drug ingredients, Plaintiff Poe discontinued use of the product.

97.     Plaintiff Poe suffered injury as a result of her purchase of Lash Boost because she was deceived into purchasing the product based on Defendant's representations that it was a "safe" "lash conditioner" and not a drug, and its material omissions indicating that Lash Boost was legally saleable.

98.     At no time did Defendant provide Plaintiff Poe with any warnings concerning the true nature of Lash Boost or the dangers associated with its use.  Plaintiff Poe would not have purchased Lash Boost had she known that it was being sold illegally, contained drug ingredients, and/or contained ingredients known to cause adverse effects.

99.   Plaintiff Poe would purchase Lash Boost in the future if she could be assured that it no longer contained an undisclosed drug ingredient associated with serious undisclosed side effects.

**Plaintiff Anna Dohnke**

100.   Plaintiff Anna Dohnke first learned about Lash Boost from a Rodan & Fields consultant who contacted her about the product in October 2016, before the product was officially released on or around November 2, 2016.

101.   Because Plaintiff Dohnke is generally cautious about the products she uses on her skin, she delayed purchasing Lash Boost for several months after it was released.  During this period, Plaintiff Dohnke spoke with the consultant numerous times, and the consultant repeatedly assured her that the product was totally safe to use.

102.   During one of these conversations, on January 9, 2017, Plaintiff Dohnke asked the consultant "Does [Lash Boost] have any reactions with the eyes (I remember a few years ago, something came out to darken or thicken your lashes, and it actually caused light eyes to change color.)"

103.   The consultant responded: "Yes, that's Latisse, it can cause darkening of the eye lids and iris'!! EEK this is a conditioning serum, it works totally different and does not have the same side effects.  It gives you longer, darker, fuller, looking lashes."

104.   Plaintiff Dohnke was somewhat reassured by this and her other conversations with the consultant, but also visited the Rodan & Fields website and reviewed information on that website about Lash Boost.  Specifically, she reviewed website statements indicating that Lash Boost was safe to use and not associated with any serious side effects.

105.   On or about January 20, 2017, Plaintiff Dohnke ordered her first tube of Lash Boost through the consultant she had spoken to.  She subsequently bought two more tubes of Lash Boost through this consultant in May 2017 and January 2018.

**FIRST AMENDED CLASS ACTION COMPLAINT**

106.   Plaintiff Dohnke reasonably relied upon the deceptive and misleading claims on Rodan & Fields' website, as well as the deceptive and misleading claims made by the Rodan & Fields consultant, in purchasing Lash Boost.

107.   Plaintiff Dohnke used the product shortly after purchasing it and followed the product directions during application.  Sometime after beginning to use the product, Plaintiff Dohnke began to experience gradually worsening symptoms, including redness, irritation, sharp and sudden pain in the area between the tear duct and iris, yellowing of the eye, foreign body sensation ("FBS") in the eyes, dry eyes, and blurry vision.

108.   On or about June 8, 2017, one of Plaintiff Dohnke's colleagues commented on a thick, yellow area that had developed on the cornea of her right eye.  The colleague mentioned that it appeared to be a pterygium – a discolored, triangular tissue growth that invades the eye and has the potential to obscure the optical center of the cornea.  The colleague noted that she recognized the condition because she had experienced it herself.

109.   In early July of 2017, Plaintiff Dohnke had a doctor's visit with her general practitioner, who confirmed that her eye growth appeared to be a pterygium.

110.   Plaintiff Dohnke began to suspect, based on the fact that she had not changed anything else about her routine, that Lash Boost could be the source of her condition.  She began to use the product less frequently starting in the fall of 2017, and stopped using it altogether around March 2018, after which some of her side effects subsided and/or became less severe.  She was not able to use any of the third tube of Lash Boost she purchased.

111.   Plaintiff Dohnke suffered injury as a result of her purchase of Lash Boost because she was deceived into purchasing the product based on Defendant's representations that it is a safe, non-drug product not associated with any significant side effects, and its material omissions indicating that Lash Boost is legally saleable.

112.   At no time did Defendant provide Plaintiff Dohnke with any warnings concerning the true nature of Lash Boost or the dangers associated with its use.  Plaintiff Dohnke would not

have purchased Lash Boost had she known that it was being sold illegally, contained drug ingredients, or contained ingredients known to cause adverse effects.

113.   Plaintiff Dohnke would purchase Lash Boost in the future if she could be assured that it no longer contained an undisclosed drug ingredient associated with serious undisclosed side effects.

## VI.   CLASS ACTION ALLEGATIONS

114.   Plaintiffs incorporate and reallege the above paragraphs.

115.   Plaintiffs bring this action on behalf of themselves and the members of the proposed Class, which consists of:

> All California consumers who purchased Lash Boost for personal, family, or household purposes. Excluded from the Class are Defendant; any entity in which Defendant has a controlling interest; and any legal representative, heir or assign of Defendant. Also, excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

116.   The members of the Class are so numerous that joinder is impractical.  The Class consist of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to Rodan & Fields' records.

117.   There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

a.   Whether Lash Boost qualifies as a drug product under California laws governing food, drugs, and cosmetics;

b.   Whether Lash Boost is misbranded under California laws governing food, drugs, and cosmetics;

c.   Whether the manufacture, marketing, or sale of Lash Boost is unlawful under California laws governing food, drugs, and cosmetics;

d.   Whether Defendant had a duty to disclose material facts regarding Lash Boost's status as a drug, safety concerns associated with Lash Boost, or the illegality of Lash Boost sales;

e.   Whether Defendant had a duty to not misrepresent material facts regarding Lash Boost's status as a drug, safety concerns associated with Lash Boost, or the illegality of Lash Boost sales;

f.   Whether Defendant failed to disclose material facts regarding safety concerns associated with Lash Boost;

**FIRST AMENDED CLASS ACTION COMPLAINT**

g.  Whether Defendant failed to disclose material facts regarding Lash Boost's status as a drug or the illegality of Lash Boost sales;

h.  Whether Defendant misrepresented material facts regarding safety concerns associated with Lash Boost;

i.  Whether Defendant misrepresented material facts regarding Lash Boost's status as a drug or the illegality of Lash Boost sales;

j.  Whether Defendant's nondisclosures and misrepresentations would be material to a reasonable consumer;

k.  Whether Defendant's nondisclosures and misrepresentations constitute an unlawful business practice in violation of the UCL;

l.  Whether Defendant's nondisclosures and misrepresentations constitute an unfair business practice in violation of the UCL;

m.  Whether Defendant's nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the UCL, CLRA, or FAL;

n.  Whether Defendant knowingly or willfully misrepresented or failed to disclose Lash Boost's status as a drug, significant safety concerns associated with Lash Boost, or the illegality of Lash Boost sales;

o.  Whether Defendant breached express warranties relating to Lash Boost;

p.  Whether Defendant was unjustly enriched by receiving moneys in exchange for Lash Boost;

q.  Whether the challenged practices harmed Plaintiffs and members of the Class; and

r.  Whether Plaintiffs and members of the Class are entitled to damages, restitution, equitable relief, and/or injunctive relief.

118.  Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs, like all members of the Class, purchased Lash Boost when its marketing materials contained serious omissions and misrepresentations regarding its safety and its status as a purely cosmetic product, as opposed to a drug product.   Furthermore, like all members of the class, Plaintiffs sustained damages from Rodan & Fields' wrongful conduct.  Accordingly, Plaintiffs have no interests antagonistic to the interests of any other member of the Class.

119.  Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and have retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiffs are adequate representative and will fairly and adequately protect the interests of the Class.

120.  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.

FIRST AMENDED CLASS ACTION COMPLAINT

121.   While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Rodan & Fields' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

122.   Rodan & Fields has acted or refused to act on grounds that apply generally to the Class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the Class as a whole.

123.   The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Rodan & Fields. For example, one court might enjoin Rodan & Fields from performing the challenged acts, whereas another might not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

124.   The conduct of Rodan & Fields is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, the systematic policies and practices of Rodan & Fields make declaratory relief with respect to the Class as a whole appropriate.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE "FRAUDULENT" PRONG OF THE UCL**
**(CAL. BUS. & PROF. CODE § 17200, et seq.)**

125.   Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

127.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

128.   Defendant has violated the fraudulent prong of § 17200, because its material misrepresentations and omissions regarding safety concerns associated with Lash Boost and the fact that Lash Boost is illegally marketed and sold as a purely cosmetic product when it is actually a drug, have deceived Plaintiffs and are highly likely to deceive reasonable members of the consuming public.

129.   Plaintiffs and members of the Class have suffered injury in fact, including the loss of money, as a result of Defendant's unlawful, unfair, and/or deceptive practices.  Specifically, Defendant's material misrepresentations and omissions about the safety, legality, and drug ingredients of Lash Boost induced reasonable purchasers, including Plaintiffs, to buy the product, which they otherwise would not have purchased or would have paid less for.

130.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Rodan & Fields' business. Defendant's wrongful conduct is part of a general practice that is still being perpetuated and repeated throughout the State of California.

131.   Furthermore, as a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

132.   Through its fraudulent acts and practices, Defendant has improperly obtained money from Plaintiffs and the Class.

133.   Consequently, Plaintiffs request that this court cause Defendant to restore this money to Plaintiff and all Class members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE "UNLAWFUL" PRONG OF THE UCL**
**(CAL. BUS. & PROF. CODE § 17200, et seq.)**

134.   Plaintiffs incorporate and reallege by reference each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

135.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

136.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

137.   Defendant has violated the unlawful prong by virtue of its violations of the Sherman Food Drug & Cosmetics Laws, California's Health & Safety Code §§ 109875 et seq., selling new drugs without an approved new drug application, and selling misbranded drug and cosmetic products. In addition, Defendant has violated the unlawful prong by virtue of its violations of the CLRA and the FAL.

138.   As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

139.   Through its unlawful acts and practices, Defendant has improperly obtained money from Plaintiffs and the Class.

140.   Consequently, Plaintiffs request that this court cause Defendant to restore this money to Plaintiffs and all Class members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE "UNFAIR" PRONG OF THE UCL**
**(CAL. BUS. & PROF. CODE § 17200, et seq.)**

141.   Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

142.   The UCL defines unfair business competition to include any "unlawful, unfair or

fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

143. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

144. Defendant has violated the unfair prong of § 17200 because the acts and practices set forth in the Complaint—including making misrepresentations and material omissions regarding the drug ingredients contained in Lash Boost and the serious safety concerns associated with them—offend established public policy.

145. The challenged conduct substantially injures consumers, and the harm to consumers greatly outweighs any benefits associated with Defendant's actions. Reasonable consumers are not in a position to understand, given Defendant's misrepresentations and omissions, the safety concerns posed by Lash Boost, or the fact that it is actually a drug that is illegally marketed and sold.

146. Through its unfair acts and practices, Defendant has improperly obtained money from Plaintiffs and the Class.

147. Consequently, Plaintiffs request that this court cause Defendant to restore this money to Plaintiffs and all Class members, and to enjoin Defendant from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE FALSE ADVERTSING LAW**
**(CAL. BUS. & PROF CODE §§ 17500, *et seq*.)**

148. Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

149. California's Business and Professions Code § 17500, *et seq*. prohibits unfair, deceptive, untrue, or misleading advertising. When the seller has a duty to disclose material facts

29
**FIRST AMENDED CLASS ACTION COMPLAINT**

about a product, the sale of the product to consumers without disclosure of such material facts violates the FAL.

150.   Defendant markets and sells Lash Boost as if it were a purely cosmetic product free of significant safety concerns, when in fact, the reverse is true.  Specifically, Defendant materially misrepresents and misleads consumers about the fact that Lash Boost is a Drug, and the fact that it poses serious health risks, and omits from its marketing materials the fact that Lash Boost is misbranded and sold illegally.

151.   Through its false advertising scheme, Defendant has improperly obtained money from Plaintiffs and the Class.

152.   Consequently, Plaintiffs request that this court cause Defendant to restore this money to Plaintiffs and all Class members, and to enjoin Defendant from continuing to violate the FAL as discussed herein and/or from violating the FAL in the future. Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *et seq.*)

153.   Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

154.   Plaintiffs and each member of the proposed class are "consumers" within the meaning of California Civil Code § 1761(d).

155.   Defendant's sales of Lash Boost were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

156.   The products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code §1761(a).

157.   Cal. Civ. Code § 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services."

158.   As described herein, Defendant violated the CLRA by marketing and selling

misbranded drug products, which required government approval prior to sale, but which lacked such approval. The sale of each Lash Boost product was a misrepresentation to consumers that the product was recognized as safe by the FDA and/or California Department of Public Health, when it was not.

159.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…."  Furthermore, Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

160.   Defendant violated these provisions of the CLRA by marketing and selling misbranded drug and cosmetic products that posed serious health and safety concerns. The sale of each Lash Boost product misrepresented that the product was free of undisclosed safety concerns. In addition, the sale of each Lash Boost Product misrepresented that the product is not a drug, has been determined to be safe, and is otherwise legally offered for sale.

161.   The CLRA (including §§ 1770(a) (2), (5), (7)) supports claims for omissions of material fact that Defendant was obligated to disclose. In this case, Defendant was obligated, but failed to disclose the known safety concerns associated with the isopropyl cloprostenate contained in its Lash Boost products, the fact that Lash Boost is a drug, and the illegality of Lash Boost sales.

162.   Plaintiffs relied on Defendant's false and misleading omissions and representations about the safety and legal status of Lash Boost in deciding to the product through Defendant's website and distributors. Plaintiffs would not have purchased the products they bought or would not have been willing to pay the amount they did absent Defendant's unlawful conduct.

163.   Pursuant to Cal. Civ. Code § 1780(a), on April 17, 2018, counsel for Plaintiffs provided proper notice of their intent to pursue claims under the CLRA and an opportunity to cure to Defendant via certified mail to Defendant's registered agent at 2710 Gateway Oaks Drive, Suite 150N, San Francisco, CA 95833.  The domestic return receipt indicates the letter was delivered

and signed for on April 19, 2018 by Vicki Plough.  A copy of the letter was also sent certified to Rodan & Fields' headquarters in San Francisco, California, which was signed for by Randall Vaughn on April 18, 2018.  True and correct copies of the April 17, 2018 notice letter and the related return receipts are attached hereto as Exhibit D.

164.    Plaintiffs request this Court enjoin Defendant from continuing to violate the CLRA as discussed herein and/or from violating the UCL in the future. Plaintiffs, the Classes and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

165.    To date, Defendant has not responded to the CLRA letter and has taken no action to remedy its unlawful activities described herein or to otherwise address the CLRA violations and associated harm Plaintiffs outlined in their notice letter. Thus, Plaintiffs hereby amend their complaint pursuant to Cal. Civ. Code § 1782(b) and (d) to seek actual and punitive damages, in addition to restitution, injunctive relief, and any other relief the Court deems proper.

166.    Plaintiffs' affidavits stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) are attached hereto as Exhibits A, B and C.

## SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

167.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

168.    Through its marketing campaign, Defendant expressly warranted to the public that Lash Boost is not a drug product, and that its ingredients have not been associated with any significant side effects.  Defendant's statements include that Lash Boost:

… is a cosmetic-grade product designed to improve the appearance of your lashes. It is not a drug product and will not affect the structure and function of your lashes.

… is a cosmetic product and not considered a drug. It contains only cosmetic ingredients to address the appearance of lashes and is not intended to be a medical treatment for damaged lashes.

… is a cosmetic product and does not contain any over-the-counter (OTC) or drug ingredients. It contains a complete formula of safe ingredients which moisturize, nourish and protect the appearance of lashes.

… is clinically and ophthalmologist tested, and found to be safe and non-irritating.

… contains a complete formula of safe ingredients which moisturize, nourish and protect the appearance of lashes.

… is a cosmetic, and the ingredients have not been associated with any significant side effects.

… is not anticipated to cause permanent discoloration on the eye area.

… does not cause discoloration or change in pigmentation of the iris. Those serious side effects are associated with the warnings on drug products only. The cosmetic ingredients used in … Lash Boost have never been associated with reports of change in iris pigmentation or any discoloration.[57]

169.    The above-described statements became the basis of the bargain for Plaintiffs and other Class members because such statements are among the facts a reasonable consumer would consider material in the purchase of eyelash enhancement products.

170.    Defendant violated these express warranties by marketing and selling to Plaintiffs and the Class a product which is in fact a drug, and which contains ingredients known to be associated with serious adverse effects, including ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy.

171.    As a result of the foregoing breaches of express warranty, Plaintiffs and the Class have been damaged in that they purchased a product that has completely different qualities than those expressly warranted by Defendant.  Namely, the product they purchased is a drug that has been associated with significant health risks.  As a result, Plaintiffs and the Class did not receive the benefit of the bargain of their Lash Boost purchase.

172.    Plaintiffs and the class seek all damages permitted by law in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**

---

[57] http://www.rodanandfields.com/rfconnection/?s=lash+boost

**FIRST AMENDED CLASS ACTION COMPLAINT**

## COMMON LAW FRAUD

173.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

174.    Defendant engaged in fraudulent and deceptive conduct. As described above, Defendant's conduct defrauded Plaintiffs and Class members by intentionally leading them to believe, through affirmative misrepresentations and omissions of material fact, that Lash Boost possesses important characteristics that it in fact does not possess—namely that it is not a drug, that it is not associated with any serious side effects, and that it is legally marketed and sold—and inducing their purchases.

175.    Defendant's intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, labeling and other standardized statements claiming the Lash Boost is a purely cosmetic product whose ingredients have not been associated with any serious side effects.

176.    The foregoing misrepresentations were uniform across all Class members.

177.    The same extensive and widespread advertising campaign was promoted throughout the State of California, and all of the promotional materials contained the same material representations regarding Lash Boost's safety and status as a non-drug product.

178.    These representations were false, as detailed herein. Defendant knew the representations were false when it made them and thereby intended to defraud purchasers.

179.    Defendant's actions constitute "actual fraud" within the meaning of Cal. Civ. Code § 1572 because Defendant did the following with the intent to deceive Plaintiffs and Class members and to induce them to enter into their contracts:

a. Positively asserted that Lash Boost is not a drug product and does not contain any over-the-counter (OTC) or drug ingredients, even though it knew this to be not true;

b. Positively asserted that Lash Boost's ingredients have not been associated with any significant side effects, or with reports of change in iris pigmentation or any discoloration, in a manner not warranted by the information available to Defendant;

c. Suppressed the true nature of Lash Boost, its ingredients, and its legal status from Plaintiffs and Class members; and

d. Promised it would deliver a safe, purely cosmetic product with no intention of so doing.

180.    Defendant's actions, listed above, also constituted "deceit" as defined by Cal. Civ. Code § 1710 because Defendant willfully deceived Plaintiffs and Class members with intent to induce them to alter their positions to their detriment by purchasing Lash Boost.

181.    Defendant's fraud and concealment was also uniform across all Class members; Defendant concealed from everyone the true nature of Lash Boost and its ingredients.

182.    Defendant's misrepresentations and omissions were material in that they would affect a reasonable consumer's decision to purchase Lash Boost. A reasonable consumer would not purchase an eyelash enhancement serum advertised as being a safe, purely cosmetic product if they knew it contained drug ingredients associated with serious adverse effects and had not gone through the proper regulatory approval process.

183.    Defendant's intentionally deceptive conduct induced Plaintiffs and Class members to purchase Lash Boost and resulted in harm and damage to them.

184.    Plaintiffs believed and relied upon Defendant's misrepresentations and concealment of the true facts. Class members are presumed to have believed and relied upon Defendant's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Lash Boost.

185.    As a result of Defendant's inducements, Plaintiffs and Class members sustained actual damages including but not limited to receiving a product that does not possess the promised qualities, and not receiving the benefit of the bargain of their Lash Boost purchases. If Plaintiffs and Class members had known about the true nature of Lash Boost and its ingredients, they would not have purchased Lash Boost or would have paid significantly less for them. Defendant is therefore liable to Plaintiffs and Class members in an amount to be proven at trial.

186.    Defendant's conduct was systematic, repetitious, knowing, intentional, and

malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class members' rights and interests. Defendant's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

### EIGHTH CAUSE OF ACTION
### UNJUST ENRICHMENT

187.   Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

188.   Plaintiffs and members of the class conferred a benefit upon Defendant.  Namely, Plaintiffs and members of the class paid money to Defendant for Lash Boost.

189.   Defendant, however, retained that benefit under circumstances that make it unjust and inequitable for Defendant to retain it without paying Plaintiffs and members of the class the value thereof.  Specifically, Defendant retained that benefit despite the fact that Lash Boost is a drug product, contains ingredients associated with serious adverse effects, and is illegally marketed and sold.

190.   When purchasing Lash Boost, Plaintiffs and Class members reasonably believed that it was a purely cosmetic product whose ingredients were not associated with serious adverse effects, as advertised and as warranted, and that it was legally saleable.

191.   Plaintiffs and Class members received less than what they paid for in that Lash Boost did not possess any of these qualities.

192.   Plaintiffs and Class members conferred a benefit on Defendant by purchasing the Lash Boost. Had Plaintiffs and Class members known the true facts about Lash Boost, they would not have purchased it or would have paid significantly less for it.

193.   Defendant should therefore be required to disgorge all profits, benefits, and other such compensation it obtained through its wrongful conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class demand a jury trial on all claims so triable

and judgment against Defendant Rodan & Fields as follows:

A. An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Class Counsel;

B. A judgment awarding Plaintiffs and the Class damages, rescission, restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class as a result of its unfair and fraudulent business practices described herein;

C. An order enjoining Defendant from continuing to violate the UCL, FAL, and CLRA as described herein;

D. A judgment awarding actual and punitive damages to Plaintiff and the Class in an amount to be determined at trial;

E. A judgment awarding Plaintiffs their costs of suit; including reasonable attorneys' fees pursuant to California Civil Code § 1780(d), California Code of Civil Procedure § 1021.5 and as otherwise permitted by statute; and pre and post judgment interest; and

F. Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  May 25, 2018

Respectfully submitted,

By:_____
Annick M. Persinger

Annick M. Persinger (State Bar No. 272996)
483 Ninth St., Suite 200
TYCKO & ZAVAREEI LLP
Oakland, CA  94607
Telephone: (510) 254-6808
Facsimile: (510) 210-0571
Email:  apersinger@tzlegal.com

FIRST AMENDED CLASS ACTION COMPLAINT

Hassan A. Zavareei (State Bar No. 181547)
Andrea R. Gold (*pro hac vice* forthcoming)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email: hzavareei@tzlegal.com
Email: agold@tzlegal.com

*Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT A

Annick M. Persinger (State Bar No. 272996)
TYCKO & ZAVAREEI LLP
483 Ninth St., Suite 200
Oakland, CA 94607
(510) 254-6808
(510) 210-0571 *facsimile*
apersinger@tzlegal.com

Hassan A. Zavareei (State Bar No. 181547)
Andrea R. Gold (*pro hac vice* forthcoming)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 *facsimile*
hzavareei@tzlegal.com
agold@tzlegal.com

*Attorneys for Plaintiffs*

## THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISO

CARYN GORZO, KASEY POE, AND ANNA
DOHNKE, individually and on behalf of
themselves and all others similarly situated,

               Plaintiffs,

     v.

RODAN & FIELDS, LLC,

               Defendant.

**CONSUMERS LEGAL REMEDIES
ACT VENUE DECLARATION**

I, Caryn Gorzo, declare as follows:

1.     I am a named plaintiff in this litigation.

2.     I have personal knowledge of the matters set forth below except to those matters stated herein which are based on information and belief, which matters I believe to be true.

3.     If called as a witness I could and would competently testify to the matters included herein.

---

**CLASS ACTION COMPLAINT**

4.      I purchased Rodan & Fields Lash Boost as described in the complaint.

5.      I am informed and believe that venue is proper in this Court under California Civil Code § 1780(d) based on the fact that Rodan & Fields, LLC is headquartered in this judicial district.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed

on ____4/9/2018____, at ____Murrieta, CA_____.
　 DATE 　　　　　　　 LOCATION

By: _____
　　　Caryn Gorzo

# EXHIBIT B

DocuSign Envelope ID: 2B78822F-56B0-4404-BDF5-977B945D5E19

Annick M. Persinger (State Bar No. 272996)
TYCKO & ZAVAREEI LLP
483 Ninth St., Suite 200
Oakland, CA 94607
(510) 254-6808
(510) 210-0571 *facsimile*
apersinger@tzlegal.com

Hassan A. Zavareei (State Bar No. 181547)
Andrea R. Gold (*pro hac vice* forthcoming)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 *facsimile*
hzavareei@tzlegal.com
agold@tzlegal.com

*Attorneys for Plaintiffs*

## THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISO

| | |
|---|---|
| CARYN GORZO, KASEY POE, AND ANNA DOHNKE, individually and on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | **CONSUMERS LEGAL REMEDIES ACT VENUE DECLARATION** |
| v. | |
| RODAN & FIELDS, LLC, | |
| Defendant. | |

I, Kasey Poe, declare as follows:

1.      I am a named plaintiff in this litigation.

2.      I have personal knowledge of the matters set forth below except to those matters stated herein which are based on information and belief, which matters I believe to be true.

3.      If called as a witness I could and would competently testify to the matters included herein.

---

**CLASS ACTION COMPLAINT**

4.     I purchased Rodan & Fields Lash Boost as described in the complaint.

5.     I am informed and believe that venue is proper in this Court under California Civil Code § 1780(d) based on the fact that Rodan & Fields, LLC is headquartered in this judicial district.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on ____4/6/2018____, at ___Grover Beach, CA_____.

DATE                     LOCATION

By: _____

Kasey Poe

# EXHIBIT C

Annick M. Persinger (State Bar No. 272996)
TYCKO & ZAVAREEI LLP
483 Ninth St., Suite 200
Oakland, CA 94607
(510) 254-6808
(510) 210-0571 *facsimile*
*apersinger@tzlegal.com*

Hassan A. Zavareei (State Bar No. 181547)
Andrea R. Gold (*pro hac vice* forthcoming)
TYCKO & ZAVAREEI LLP
1828 L Street, N.W., Suite 1000
Washington, D.C.  20036
(202) 973-0900
(202) 973-0950 *facsimile*
*hzavareei@tzlegal.com*
*agold@tzlegal.com*

*Attorneys for Plaintiffs*

## THE SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISO

|  |  |
|---|---|
| CARYN GORZO, KASEY POE, AND ANNA DOHNKE, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RODAN & FIELDS, LLC,<br><br>Defendant. | **CONSUMERS LEGAL REMEDIES ACT VENUE DECLARATION** |

I, Anna Dohnke, declare as follows:

1.   I am a named plaintiff in this litigation.

2.   I have personal knowledge of the matters set forth below except to those matters stated herein which are based on information and belief, which matters I believe to be true.

3.   If called as a witness I could and would competently testify to the matters included herein.

---

**CLASS ACTION COMPLAINT**

DocuSign Envelope ID: 455D08B9-5AFA-4F56-870C-72412BB496f9

4.      I purchased Rodan & Fields Lash Boost as described in the complaint.

5.      I am informed and believe that venue is proper in this Court under California Civil Code § 1780(d) based on the fact that Rodan & Fields, LLC is headquartered in this judicial district.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed

on ___4/7/2018___, at ___Tehachapi, California___.
DATE                       LOCATION

By: _____
    Anna Dohnke

# EXHIBIT D



| | |
|---|---|
| **WASHINGTON DC** | ▶ **CALIFORNIA** |
| 1828 L Street, NW │ Suite 1000 | 483 Ninth Street │ Suite 200 |
| Washington, DC 20036 | Oakland, CA 94607 |
| 202.973.0900 | 510.254.6808 |
| www.tzlegal.com | |

**VIA CERTIFIED MAIL**

April 17, 2018                                                    Our File No. 463-01c

Rodan & Fields, LLC
c/o CSC- Corporation Service Company
2710 Gateway Oaks Drive Suite 150N
Sacramento, CA 95833

Re:     *Caryn Gorzo, Kasey Poe, and Anna Dohnke v. Rodan & Fields, LLC*
        Violation of the California Consumer Legal Remedies Act
        (California Civil Code § 1750 *et seq.*)

Dear Counsel:

Pursuant to the California Consumers Legal Remedies Act, California Civil Code Section 1750, *et seq.* (the "CLRA"), Caryn Gorzo, Kasey Poe, and Anna Dohnke, on behalf of themselves and all others similarly situated, through their undersigned counsel, hereby notifies you that Rodan & Fields, LLC ("Rodan & Fields") is alleged to have violated Civil Code Section 1770 by engaging in the following misconduct with respect to its product, Enhancements Lash Boost ("Lash Boost"):

(a)  Representing to consumers that Lash Boost is a purely cosmetic product when it knew, or should have known, that Lash Boost is in fact a drug.

(b) Representing to consumers, by marketing and selling Lash Boost, that it is a legally saleable product, when it knew, or should have known that Lash Boost is a misbranded drug product, and that it lacks required government approval.

(c)  Representing to consumers that Lash Boost is not associated with any serious side effects when it knew, or should have known, that Lash Boost poses serious health risks.

The conduct described herein violates Cal. Civ. Code § 1770(a)(2), which prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services," Cal. Civ. Code § 1770(a)(5), which prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have….," and Cal. Civ. Code § 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a



April 17, 2018
Page 2

particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

Based on the foregoing, Ms. Gorzo, Ms. Poe, and Ms. Dohnke, on behalf of themselves and all others similarly situated (the "Class"), demand that Rodan & Fields cease the above-described misconduct and agree to refund all monies received by Rodan & Fields from California consumers who purchased Lash Boost.

Please be advised that should Rodan & Fields refuse to comply with this demand within 30 days of its receipt, Ms. Gorzo, Ms. Poe, and Ms. Dohnke will seek monetary damages for themselves and a proposed Class of others similarly situated, as well as an award of injunctive relief, restitution, punitive damages, costs, attorneys' fees, and any other relief the court deems proper. Please have your attorney contact us to discuss this notice and demand.

Regards,

Andrea R. Gold

cc: Rodan & Fields, LLC
60 Spear Street, Suite 600.
San Francisco, CA 94105

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____   □ Agent<br>                        □ Addressee<br>B. Received by (Printed Name)   C. Date of Delivery<br>Carda ll Vaughn   4 8 78 |
| 1. Article Addressed to:<br><br>Rodan & Fields, LLC<br>60 Spear St, Suite 600<br>San Francisco, CA 94105 | D. Is delivery address different from item 1?  □ Yes<br>   If YES, enter delivery address below:   □ No |



9590 9402 3464 7275 9397 62

| 3. Service Type<br>□ Adult Signature<br>□ Adult Signature Restricted Delivery<br>□ Certified Mail®<br>□ Certified Mail Restricted Delivery<br>□ Collect on Delivery<br>□ Collect on Delivery Restricted Delivery<br>□ all<br>□ all Restricted Delivery<br>(over 3500) | □ Priority Mail Express®<br>□ Registered Mail™<br>□ Registered Mail Restricted Delivery<br>□ Return Receipt for Merchandise<br>□ Signature Confirmation™<br>□ Signature Confirmation Restricted Delivery |

2. Article Number *(Transfer from service label)*

7017 3380 0000 3961 1218

PS Form **3811**, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

**USPS TRACKING #**



9590 9402 3464 7275 9397 62

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

* Sender: Please print your name, address, and ZIP+4® in this box•

Chloe Neh
Tycko & Zavareei LLP
483 9th St - Ste 200
Oakland, CA 94607

05i50        [mailing barcode]

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CSC
Rudan & Fields LLC
2710 Gateway Oaks Dr.
Suite 150N
Sacramento, CA 95833

9590 9402 3464 7275 9394 89

2. Article Number (Transfer from service label)
7017 3380 0000 3961 1225

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Vicki

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

APR 19 2018

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**USPS TRACKING #**

9590 9402 3464 7275 9394 89

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•



Chloe Noh
TYCKO & ZAVAREEI LLP
483 9th St - Ste 200
Oakland, CA 94607

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ALAMEDA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Alameda, State of California. My business address is 483 Ninth Street, Suite 200, Oakland, CA 94607.

On May 25, 2018, I served true copies of the following document(s) described as:

**FIRST AMENDED CLASS ACTION COMPLAINT**

On the interested parties in this action as follows:

Stephanie A. Sheridan
Anthony J. Anscombe
Meegan B. Brooks
Steptoe & Johnson LLP
ssheridan@steptoe.com
aanscombe@steptoe.com
mbrooks@steptoe.com
One Market Street, Steuart Tower, Suite 1800
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699

*Attorneys for Defendant Rodan & Fields, LLC*

**[X] BY E-MAIL:** I transmitted a correct and true attachment of the document(s) to the email addresses listed above.

**[X] BY FIRST CLASS MAIL:** I enclosed a copy of the document(s) in a sealed envelope addressed as indicated above and deposited it with the United States Postal Service, first class postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EXECUTED this 25th day of May 2018, in Oakland, CA.

_____
**Chloe Hyunji Noh**